**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| MARRIOTT INTERNATIONAL, INC.,<br>10400 Fernwood Road<br>Bethesda, Maryland 20817,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN DOES 1–10,<br><br>    Defendants. | Civil Action No. _____ |

## <u>COMPLAINT</u>

Plaintiff Marriott International, Inc. ("Marriott"), by counsel, alleges as follows for its Complaint against Defendants John Does 1–10 ("Defendants"), seeking the disabling of robocall scams that violate consumers' rights and infringe upon Marriott's goodwill and valuable trademark rights.

## <u>NATURE OF THE SUIT</u>

1.     This is an action for trademark infringement, trademark counterfeiting, false designation of origin and false advertising under the Lanham Act, 15 U.S.C. §§ 1114(1) & 1125(a), deceptive and abusive telemarketing practices under the Telemarketing Sales Rule, 16 C.F.R. § 310, unfair competition under the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200, and false advertising under Va. Code Ann. § 18.2-216 against Defendants.

2.     Without Marriott's authorization or consent, Marriott's invaluable rights in its famous and distinctive MARRIOTT trademarks have been deliberately infringed upon through Defendants' unauthorized use of the MARRIOTT name and trademarks while telemarketing of promotions via illegal robocalls.  Using these illegal robocalls referencing Marriott's name and

marks, Defendants entice consumers, and specifically target consumers located in this Court's district, to purchase promotions from Defendants, entities that are not authorized by or affiliated with Marriott.

3.     Robocalls are not merely an annoyance to consumers but a pervasive problem that disrupts and disturbs consumers' lives on an enormous scale—American consumers have received an estimated 18 billion robocalls in 2021.   YOUMAIL: ROBOCALL INDEX, https://robocallindex.com/history/time.

4.     Marriott and the consuming public are being misled and confused by Defendants' misconduct.  As a result, Marriott and the consuming public will suffer irreparable harm unless this Court acts swiftly to halt the unauthorized and fraudulent use of the Marriott trademarks.

## PARTIES

5.     Plaintiff Marriott is a Delaware corporation with a principal place of business at 10400 Fernwood Road, Bethesda, Maryland 20817.  Marriott owns a large family of trademarks consisting of or containing MARRIOTT.

6.     Defendants John Does 1–10 are persons of unknown identity who initiated and currently operate robocall scams that misuse the MARRIOTT name and trademarks.

## JURISDICTION, VENUE AND JOINDER

7.     This Court has original jurisdiction over Plaintiff's Lanham Act claims under 15 U.S.C. §§ 1121(a), 1125(d) and 28 U.S.C. §§ 1331 and 1338(a).  The Court has original jurisdiction over Plaintiff's Telemarketing Sales Rule claims under 15 U.S.C. § 6104(a) and 28 U.S.C. § 1331.

8.     This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

9.     The Court has *in personam* jurisdiction over Defendants because Plaintiff's claims

against Defendants for trademark infringement, trademark counterfeiting, false designation of origin, false advertising, deceptive and abusive telemarketing practices, and unfair competition are based on Defendants' misuse of the Marriott name and trademarks in the marketing, solicitation, and sale of promotions purported to be affiliated with Marriott through the use of robocalls to consumers located in this district.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.

## MARRIOTT'S RIGHTS

11.     J. Willard Marriott, Sr. and Alice Marriott launched Marriott in 1927, and the family has been involved in the business for over 90 years.  Their son, J. Willard Marriott, Jr., is the current executive chairman of the company, and their grandchildren Deborah Marriott Harrison and David Marriott are both members of the Board of Directors.  This family-oriented business has developed from a root beer stand in Washington, D.C. into the largest hotel company in the world.[1]

12.     Marriott entered the hotel business in 1957 and became a global enterprise over the next twenty-five years under Bill Marriott's leadership.

13.     Marriott operates, franchises, and licenses hotel and residential properties on a worldwide scale.

14.     To date, Marriott owns 30 brands with over 7,500 hotel and residential properties in 133 countries and territories.  *See About Marriott Hotels*, MARRIOTT,

---

[1] This figure is based on the number of available rooms.  *See About Marriott Hotels*, MARRIOTT, https://www.marriott.com/marriott/aboutmarriott.mi (last visited May 15, 2021); Marriott International, Inc., Annual Report (Form 10-K) (Feb. 18, 2021), https://marriott.gcs-web.com/node/30866/html;.

https://www.marriott.com/marriott/aboutmarriott.mi (last visited May 15, 2021); Marriott International, Inc., Annual Report (Form 10-K) (Feb. 18, 2021), https://marriott.gcs-web.com/node/30866/html.

15.     Consumers around the world have come to associate the Marriott name as one of the most influential and recognized hotel brands in the world.

16.     Marriott promotes its products and services throughout the United States and the world under its Marriott formative trademarks including word marks and design marks (collectively the "MARRIOTT Marks").  This includes Marriott's use of the MARRIOTT word mark in its domain name www.marriott.com, as well as Marriott's use of the MARRIOTT Marks throughout its website.

17.     Marriott uses the MARRIOTT Marks to indicate the source of its high-quality hotel-related, lodging, residential, and hospitality services.  Consumers have come to distinguish Marriott's goods and services as a result of the use and widespread promotion of the MARRIOTT Marks.

18.     Third parties may only use MARRIOTT Marks with the express permission and authority of Marriott.

19.     The MARRIOTT Marks are entitled to common law trademark rights.

20.     The MARRIOTT Marks are famous and/or distinctive throughout the United States and the world in connection with Marriott's products and services.

21.     The MARRIOTT Marks include a number of word marks that are registered around the world, including on the Principal Trademark Register of the U.S. Patent and Trademark Office. Marriott has also registered some stylized design marks with the United States Patent and Trademark Office and elsewhere for use in connection with its MARRIOTT branded products and

services.   The following is a representative sampling of Marriott's U.S. federal trademark registrations for the MARRIOTT Marks, including both word marks and stylized design marks:

| REG. NO. | MARK | REG. DATE | REGISTERED SERVICES |
|---|---|---|---|
| 6131145 | **MARRIOTT BONVOY** | August 18, 2020 | 35 - Administration of an incentive award program that allows members to redeem points for accommodations and travel-related goods, services, and experiences; administration of an incentive award program that allows members to redeem points for awards offered by other loyalty programs; promoting hotel, resort, airline, car rental, time share, travel, and vacation services through an incentive award program; business organization, operation and supervision of loyalty programs<br>36 - Real estate timesharing services featuring an incentive award program; real estate listing, rental and leasing services for residential housing, apartments, rooms in homes, vacation homes, and villas featuring an incentive award program; issuance of credit cards; credit card authorization, verification, payment processing, and transaction processing services<br>43 - Hotel services featuring an incentive award program; hotel reservation services for others |
| 6148202 | **MARRIOTT BONVOY** | September 8, 2020 | 35 - Advertising, business management, business administration; incentive award programs, namely, programs to promote hotel, resort, airline, car rental, time share, travel, and vacation services of others; business administration of consumer loyalty programs<br>36 - Real estate timesharing services featuring an incentive award program; real estate listing, rental and leasing services for residential housing, apartments, rooms in homes, vacation homes, and villas featuring an incentive award program; credit card services<br>43 - Services for providing food and drink; temporary accommodation; hotel services featuring an incentive award program; hotel reservations |
| 6165523 | **EAT AROUND TOWN BY MARRIOTT BONVOY** | September 29, 2020 | 35 - Business administration of a customer loyalty program; providing incentive award programs for customers whereby program points are awarded for purchases made from participating businesses<br>43 - Restaurant and bar services featuring a customer loyalty program; hotel services featuring a customer loyalty program whereby program points are awarded for purchases made from participating restaurants and bars |
| 6054331 | **MARRIOTT BONVOY BOLD** | May 12, 2020 | 36 - Issuance of credit cards; credit card authorization, verification, payment processing, and transaction processing services |
| 6054323 | **MARRIOTT BONVOY BOUNDLESS** | May 12, 2020 | 36 - Issuance of credit cards; credit card authorization, verification, payment processing, and transaction processing services |
| 6054322 | **MARRIOTT BONVOY BRILLIANT** | May 12, 2020 | 36 - Issuance of credit cards; credit card authorization, verification, payment processing, and transaction processing services |
| 6054321 | **MARRIOTT BONVOY BUSINESS** | May 12, 2020 | 36 - Issuance of credit cards; credit card authorization, verification, payment processing, and transaction processing services |

| REG. NO. | MARK | REG. DATE | REGISTERED SERVICES |
|---|---|---|---|
| 5449114 | **MARRIOTT VACATION CLUB PULSE** | April 17, 2018 | 36 - Real estate services, namely, management, financing, brokerage, and leasing of timeshare properties; arranging of time share exchanges; arranging of time share holidays; real estate services, namely, management, financing, brokerage, and leasing of residential properties<br>43 - Hotel services; restaurant, catering, bar and lounge services; resort and lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others |
| 5395064 | **MARRIOTT** | February 6, 2018 | 44 - Spa services, namely, providing facial, hair, skin and body treatments, manicure and pedicure services, massage services, body waxing services and beauty salon services |
| 5238192 | **JW MARRIOTT** | July 4, 2017 | 36 - Real estate services, namely, listing, leasing, brokerage and management of condominium residential units; real estate financing |
| 4550796 | **MARRIOTT GOLF ACADEMY** | June 17, 2014 | 41 - Golf club services; golf courses; golf instruction; providing golf facilities |
| 4539498 | **M** | May 27, 2014 | 43 - Hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others |
| 4353159 | **EXPERIENCES BY MARRIOTT** | June 18, 2013 | 43 - Hotel services; restaurant, bar and cocktail lounge services; resort lodging services; and reservations services for hotel accommodations |
| 3715294 | **MARRIOTT RESORTS** | November 24, 2009 | 41 - Health club services, namely, providing consultation in the field of physical exercise; providing use of exercise equipment; providing fitness and exercise facilities; golf club, golf course and golf instruction services<br>43 - Hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for hotel accommodations for others<br>44 - Health spa services, namely, providing facial, hair, skin and body treatments, manicure and pedicure services, massage services, body waxing services and beauty salon services |
| 3628880 | **MARRIOTT** | May 26, 2009 | 09 - Computer programs, software, applications and systems, and accompanying user manuals, all for use in the hotel, lodging and hospitality industries, namely, computer software for managing the operations of hotels, lodging and hospitality facilities, computer software for financial accounting functions, computer software for financial analysis, namely, aggregating and analyzing data generated by customer transactions and preparing related reports, computer software for inventory control, delivery, scheduling and management, educational software featuring instruction in hotel, lodging and hospitality management, computer software for payroll processing and for managing human resource data, computer software for record-keeping functions in the hotel, lodging and hospitality |

| REG. NO. | MARK | REG. DATE | REGISTERED SERVICES |
|---|---|---|---|
| | | | operations; computer programs for the enabling of access or entrance control; computer carrying cases<br>38 - Providing multiple-user access to a global computer information network |
| 3639547 | MARRIOTT GRAND RESIDENCE CLUB | June 16, 2009 | 43 - Hotel, restaurant, catering, bar and lounge services; provision of general purpose facilities for meetings, conferences and exhibitions; reservation services for hotel accommodations for others |
| 3639546 | MARRIOTT GRAND RESIDENCE CLUB | June 16, 2009 | 36 - Real estate services, namely, financing, management, brokerage and leasing of timeshare properties |
| 3639551 | JW MARRIOTT | June 16, 2009 | 41 - Health club services, namely, providing instruction and consultation in the field of physical exercise; providing use of exercise equipment; providing fitness and exercise facilities; golf club, golf course and golf instruction services<br>43 - Hotel services; restaurant, catering, bar and lounge services; resort and lodging services; provision of general purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for hotel accommodations<br>44 - Health spa services, namely, providing facial, hair, skin and body treatments, manicure and pedicure services, massage services, body waxing services and beauty salon services |
| 2714665 | MARRIOTT GRAND RESIDENCE CLUB | May 6, 2003 | 43 - Hotel services; provision of facilities for meetings; reservation services for hotel accommodations |
| 2714666 | MARRIOTT GRAND RESIDENCE CLUB | May 6, 2003 | 36 - Real estate services, namely financing, management, brokerage and leasing of timeshare properties |
| 3638115 | MARRIOTT | June 16, 2009 | 41 - Golf club services; Golf courses; Golf instruction; Providing golf facilities |
| 3948765 | MARRIOTT VACATION CLUB DESTINATIONS | April 19, 2011 | 36 - Real estate services, namely, financing, brokerage, leasing and real estate agency services in the field of timeshare properties; arranging of time share exchanges; arranging of time share holidays |
| 3445053 | MARRIOTT VACATION CLUB | June 10, 2008 | 36 - Real estate time-sharing |
| 3569086 | MARRIOTT | February 3, 2009 | 35 - Online retail store and mail order catalog services featuring apparel, household goods, linens, bedding products, towels, interior furnishings, personal care products, plush toys, music recordings; Retail store services, namely, gift shop, souvenir and convenience store services |
| 3491986 | MARRIOTT | August 26, 2008 | 35 - Charitable services, namely, employment counseling and assistance in obtaining and maintaining employment provided to individuals and employers; counseling in the field of employment; coordinating volunteers for community service |
| 3491985 | MARRIOTT | August 26, 2008 | 36 - Charitable fund raising services; providing financial support to charitable, family services and health-related organizations; provision of in-kind contributions to public and private entities and individuals; providing educational scholarships and grants to educational institutions |

| REG. NO. | MARK | REG. DATE | REGISTERED SERVICES |
|---|---|---|---|
| 3006123 | M | October 11, 2005 | 43 – Hotel, restaurant, catering, bar and lounge services; provision of facilities for meetings, conferences and exhibitions; reservations services for hotel accommodations |
| 2509272 | MARRIOTT VILLAGE | November 20, 2001 | 43 - Hotel services, restaurant, catering, bar and lounge services; provision of facilities for conferences, meetings and exhibitions; reservation services for hotel accommodations for others |
| 2504099 | MARRIOTT | November 6, 2001 | 42 - Hotel, restaurant, catering, bar and lounge services; provision of facilities for meetings, conferences and exhibitions; reservation services for hotel accommodations |
| 2393255 | JW MARRIOTT | October 10, 2000 | 42 - Hotel, restaurant, catering, bar and lounge services; provision of facilities for meetings, conferences and exhibitions; making hotel * reservations * for others |
| 2426714 | DESTINATIONS BY MARRIOTT | February 6, 2001 | 41 - Special event planning and production services |
| 2384222 | MARRIOTT EXECUTIVE APARTMENTS | September 5, 2000 | 36 - Real estate services, namely, rental and management of serviced apartments |
| 2380065 | MARRIOTT EXECUTIVE APARTMENTS | August 22, 2000 | 42 - Hotel, [restaurant, catering, bar and lounge] services; [provision of facilities for meetings, conferences and exhibitions;] reservation services for hotel accommodations |
| 2343578 | MARRIOTT SUITES | April 18, 2000 | 43 - Hotel, restaurant, catering, bar and lounge services; provision of facilities for meetings, conferences and exhibitions; reservation services for hotel accommodations |
| 1576776 | MARRIOTT | January 9, 1990 | 36 – Real estate timesharing services |
| 1566496 | M | November 14, 1989 | 42 – Hotel, restaurant, catering services |
| 1277443 | MARRIOTT HOTEL | May 8, 1984 | 43 – Hotel Services |
| 1277442 | MARRIOTT HOTELS | May 8, 1984 | 43 – Hotel Services |
| 0904029 | MARRIOTT | December 8, 1970 | 43 – Hotel and restaurant services |
| 0899900 | MARRIOTT | September 29, 1970 | 43 – Hotel and restaurant services |

22.     A true and correct copy of a representative sample of U.S. trademark registrations owned by Marriott for the MARRIOTT word marks is attached hereto as Exhibit A.

23.     A true and correct copy of a representative sample of U.S. trademark registrations owned by Marriott for the MARRIOTT stylized design marks is attached hereto as Exhibit B.

24.     Many of Plaintiff's registered MARRIOTT Marks have obtained incontestable status pursuant to 15 U.S.C. § 1065.

25.     Plaintiff's incontestable federal registrations for the MARRIOTT Marks are

*conclusive* evidence of the validity of the marks, of Marriott's ownership of the marks, and of Marriott's exclusive right to use the marks in U.S. commerce.

## DEFENDANTS' UNLAWFUL ACTS

26.     Generally, telemarketing calls "interfere with [consumers'] lives, tie up their phone lines, and cause confusion and disruption on phone records." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

27.     Pertinent here is a specific type of telemarketing:  the robocall.

28.     The pervasive and unwelcome violation of consumers' rights is not only felt on a national scale but also here in Virginia.  The National Consumer Law Center reported that in 2020, 1,206,317,000 robocalls were made to consumers located in Virginia.  And with respect to 2021, about 470,412,700 robocalls already have been made to consumers located in Virginia.  NATIONAL CONSUMER LAW CENTER, *Historical Robocalls by Time for Virginia* (2021), https://robocallindex.com/history/time/virginia.

29.     In response to the mounting "public criticism of abusive telephone marketing practices" and American "outrage[] over the proliferation of intrusive, nuisance calls to their homes from telemarketers," Congress enacted the Telephone Consumer Protection Act of 1991 ("TCPA").  *Krakauer*, 925 F.3d at 649 (citing and quoting Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227 (2012)).

30.     In so doing, Congress sought to "strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms.'"  *Id*. (citing TCPA, Pub. L. No. 102-243, §§ 2(6) and 2(9), 105 Stat 2394 (1991)).  Federal agencies, states, and individuals can enforce the TCPA.  *Id*. (*see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370 (2012)).

31.     Relevant here, the TCPA restricted the use of robocalls, and the TCPA contemplated a more "consumer-driven process" for in-person telemarketing calls wherein objecting consumers are provided a mechanism to prevent unwanted calls.  *Id*. (citing 47 U.S.C. § 227(b)).

32.     The national Do-Not-Call registry was born out of that "consumer-driven process." *Id*. (citing 47 C.F.R. § 64.1200(c)(2)).  Barring specific exceptions, consumers seeking to prevent telephone solicitations may add their telephone number to the registry, which triggers restrictions on subsequent telemarketing.  *Id*.

33.     Additionally, the TCPA also authorized the Federal Trade Commission ("FTC"), a federal agency whose mission is to safeguard consumers' rights, to develop protective rules.  One such rule is the Telemarketing Sales Rule, 16 C.F.R. § 310 (2019).  *See Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331, 334 (4th Cir. 2005).  The Telemarketing Sales Rule "impose[s] several restrictions on telemarketers—requiring them, *inter alia*, to make certain disclosures, obey time restrictions, and refrain from calling consumers who have asked not to be called by that particular seller."  *Id*.

34.     Enforcement of these protective laws and rules has been strong and swift.

35.     For example, Adrian Abramovich "made 96,758,223 illegal spoofed robocalls during a three-month period in 2016 in violation of the Truth in Caller ID Act of 2009 (['] Truth in Caller ID Act[']) and the [FCC's] rules . . . ."[2]  *In re Abramovich*, FCC Rcd. 18-58, 1 (May 10, 2018).  The prerecorded message concerned vacation deals offered by well-known travel or hospitality companies, such as Marriott.  *Id*. at 2.  The FCC imposed a $120,000,000.00 fine against

---

[2] "Spoofing" is defined as "falsifying caller ID Information with the intent to defraud, cause harm, or wrongfully obtain anything of value."  *In re Abramovich*, FCC Rcd. 18-58, 1.

Abramovich for spearheading "one of the largest spoofed robocall campaigns that the [FCC] has ever investigated." *Id*. at 1.

36.     The FCC also recently assessed a forfeiture in the amount of $225,000,000.00 against John C. Spiller and Jakob A. Mears for making one billion spoofed robocalls over four months in violation of the same Act. *In re Spiller*, FCC Rcd. 21-35, 2 (Mar. 18, 2021).  The prerecorded messages concerned the sale of health-insurance plans and contained false or misleading caller ID information and falsely implied that Spiller's and Mears's company was associated with well-known health-insurance companies. *Id*. at 2.

37.     As recently as March 17, 2021, the FCC issued six cease-and-desist letters to companies involved in the transmission of illegal robocalls.

38.     Despite the staggering consequences of these federal enforcement actions, Defendants remain undeterred and continue their illicit robocall scams.

39.     In addition to federal agencies, state attorneys general and individuals are empowered to wield these tools to combat the *en masse* infringement of consumers' rights. *Krakauer*, 925 F.3d at 649 (citing *Mims*, 565 U.S. at 370).

40.     Although laws have been enacted and rules have been passed which agencies, states attorneys general, and individuals have successfully enforced, "robocalls remain a significant consumer protection problem and one of consumers' top complaints to the [FTC]."  DEP'T OF JUSTICE, TELEPHONE ROBOCALL ABUSE CRIMINAL ENFORCEMENT AND DETERRENCE ACT 2020 REPORT TO CONGRESS 5 (2020) [hereinafter "DOJ Report"], https://www.justice.gov/opa/press-release/file/1331576/download.

41.    "Through the first nine months of Fiscal Year 2020, the FTC received more than 2.7 million complaints about unwanted calls, including 1.9 million complaints about robocalls." *Id*. at 5.

42.    In general, the robocallers attempt to establish legitimacy of their promotion and seek to induce consumers to remain on the line by falsely claiming to be associated with a well-known brand or claim an affiliation with a well-known brand.

43.    Defendants have deployed several robocall scams targeting Marriott wherein Defendants misuse the MARRIOTT Marks without authorization and deceive consumers by falsely purporting to be Marriott or sponsored by Marriott.  Various iterations of these deceptive robocall scams include:

> ***Thank you for choosing Marriott hotels***, we would like to inform you that because you have stayed at one of our properties ***your telephone number was qualified by our booking system*** to receive an all[-]inclusive complimentary today for further details press zero now; to be placed on the do-not-call list[,] press two now.

> ***Thank you for choosing Marriott hotels***, **we would like to inform you that thanks to** ***the friends and family rewards program***, **your** ***membership was drawn*** **to receive a complimentary stay; for further details, press one now; to be placed on the do-not-call list, press two now.**

> Hi[,] this is an ***exclusive announcement from*** **Marriott Hotel**. Your ***telephone number has been pre-selected*** to receive a complimentary stay in one of our five[-]star hotels for further details[,] press one now.

44.    In robocall scams involving misuse of Marriott's name and the MARRIOTT Marks, the robocallers often state that the consumer qualified for the promotion because he or she was either a member of Marriott's loyalty program, or stayed at a MARRIOTT brand hotel or resort, or was recommended to receive the promotion, and the robocallers often refer to 1-800 numbers and/or particular websites in an apparent attempt to legitimize the calls.

45.     On information and belief, Defendants have called consumers on the Do-Not-Call registry.

46.     On information and belief, the infringing robocalls were made by Defendants.

47.     Defendants wrongfully and illegally maraud as Marriott or falsely state that they are acting on behalf of Marriott and use MARRIOTT Marks.

48.     Defendants have not entered into a licensing agreement with Marriott nor have Defendants obtained authorization to act on behalf of Marriott or to use MARRIOTT Marks.

49.     The promotions sold through the robocalls made by Defendants are not marketed by, sold by, endorsed by, or otherwise associated with Marriott.  Marriott is not affiliated with Defendants in any manner and has not permitted or authorized Defendants to use Marriott's name or the MARRIOTT Marks for any purpose.

50.     Based on Marriott's prefiling investigation, Defendants made over 530,000 robocalls to consumers in this District between October 2020 and March 2021 that referenced the MARRIOTT Marks without authorization.

51.     On information and belief, many of Marriott's customers have succumbed to and will continue to be ensnared by the robocall scams and purchase the promotion.

52.     Defendants' illegal robocalls have caused, and continue to cause, harm to Marriott, including irreparable harm to Marriott's goodwill and reputation.

53.     Defendants intended to and did wrongfully obtain unsuspecting Marriott customers' business by orchestrating and implementing these robocall scams.

54.     Defendants have used Marriott's name and the MARRIOTT Marks for their own gain and have usurped the goodwill Marriott developed over almost a century.

## MARRIOTT'S RESPONSE

55.     On information and belief, over the past several months, Marriott experienced an exponential increase in the number of complaints received about these illicit robocall scams from irate Marriott customers.

56.     In addition, incensed Marriott customers have turned to public forums to voice their frustrations with robocallers impersonating Marriott. Marriott customers have posted comments on Marriott's social media accounts, including Facebook and Twitter, wherein Marriott customers accuse Marriott of being the perpetrator of the robocall scams and threaten to or outright discontinue their support of Marriott.

57.     Marriott has diligently reviewed complaints made by Marriott customers via internal and external platforms and spends considerable resources responding to as many of them as reasonably possible.

58.     In addition, on December 3, 2020, Marriott updated and re-issued a public statement disavowing any participation in these robocalls, denying affiliation with the perpetrators, advising Marriott customers on how to handle such robocalls, and directing Marriott customers located in the United States to report the infringing robocall to the FTC.

59.     The statement specifically provides:

Marriott International is aware of pre-recorded telephone calls (often known as "robocalls") that fraudulently reference Marriott's name to entice the call recipient to listen to a sales pitch. Marriott is not making or authorizing these calls. Marriott is committed to protecting the privacy of the personal information that is entrusted to us and has not provided any information to the parties making these fraudulent calls. If you receive a suspicious robocall referencing Marriott, we urge you not to provide any personal or credit card information and to end the call.

For residents in the U.S., they should report the call to the Federal Trade Commission (FTC). For more information about phone scams, visit the FTC Consumer Information site.

For Canadian residents, more information on telephone scams can be found on the Canadian Telecommunications Commission's web site.

*Marriott International's Statement on Fraudulent Phone Calls,* NEWS CENTER (Dec. 3, 2020), https://news.marriott.com/news/2020/12/03/marriott-internationals-statement-on-fraudulent-phone-calls.

60.    After the public statement was released, Marriott continued to receive customer complaints from customers who were deceived into believing that Marriott was associated with the robocalls.

61.    Marriott seeks to prevent further harm to Marriott customers and to itself by commencing this action, including a request for injunctive relief.

62.    Of chief concern to Marriott is that Marriott and its customers have suffered, and continue to suffer, substantial harm at the receiving end of Defendants' illicit robocalls.  The robocalls were and are: (a) harassing to Marriott customers, (b) disturbing Marriott customers' daily lives, (c) disseminating false statements about purported employment with or an affiliation with Marriott to induce Marriott customers to remain on the line and purchase the promotion, (d) persuading Marriott customers to purchase a promotion of unknown quality from an unknown entity, and (e) confusing Marriott customers and misleading them into falsely believing there is a relationship between Marriott and Defendants.

63.    For almost 100 years, Marriott has invested significant assets in developing its brand and goodwill.  Defendants wrongfully traded and currently trade on Marriott's name and the MARRIOTT Marks, damaging Marriott's brand and goodwill for Defendants' own commercial gain.  Further, Defendants caused and cause Marriott's customers to believe that Marriott spearheaded the robocall scams and violated its own customers' rights.  As a result, the robocalls subjected and continue to subject Marriott to the following harms:  (a) Marriott customers directed their frustration about the robocalls to Marriott, thereby (b) burdening Marriott's complaint

process, (c) causing Marriott to expend resources to resolve such complaints, and (d) potentially exposing Marriott to litigation.

## COUNT ONE:
### (Trademark Counterfeiting)

64.     Marriott repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

65.     Defendants are intentionally and knowingly using counterfeit versions of the MARRIOTT Marks in connection with the sale of and/or offering for sale of time shares.

66.     Defendants used spurious designations that are identical with, or substantially indistinguishable from, the MARRIOTT Marks on goods and/or services covered by the federal registrations for such marks.

67.     Defendants used these spurious designations knowing they are counterfeit in connection with the advertisement, promotion, sale, and offering for sale of goods and/or services.

68.     Defendants' unauthorized use of the MARRIOTT Marks as set forth above is likely to: (a) cause confusion, mistake, and deception; (b) cause the public to believe that the products and/or services sold by Defendants are authorized, sponsored or approved by Marriott or that Defendants are affiliated, connected, or associated with or in some way related to Marriott; and (c) result in Defendants unfairly benefiting from Marriott's advertising and promotion and profiting from the reputation of MARRIOTT and the MARRIOTT Marks all to the substantial and irreparable injury of the public and Marriott for which monetary relief will not suffice.

69.     The aforesaid acts by Defendants constitute willful trademark counterfeiting in violation of Sections 32 and 34 of the Lanham Act, 15 U.S.C. §§ 1114 and 1116(d)(1).

## COUNT TWO:
### (Trademark Infringement)

70.     Marriott repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

71.     Defendants are using the MARRIOTT Marks in commerce and has no valid rights in the MARRIOTT Marks.

72.     Defendants have actual and/or constructive notice, pursuant to Section 22 of the Lanham Act, 15 U.S.C. § 1072, of the existence of MARRIOTT's superior rights in its MARRIOTT Marks by reason of the existence of Marriott's aforementioned federal trademark rights.

73.     Use of the MARRIOTT Marks by Defendants is without the permission or authorization of Marriott.

74.     The aforesaid acts by Defendants have caused and/or are likely to cause confusion, mistake and/or deception among consumers and the public, leading the public falsely to believe that the products advertised and sold by Defendants are those of, are sponsored or approved by, or are in some way connected with Marriott.  And because Marriott customers filed complaints with Marriott about these robocalls, it is clear that actual confusion indeed occurred.

75.     The aforesaid acts by Defendants constitute direct infringement of Marriott's trademark rights in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

76.     The aforesaid acts have caused, and are causing, great and irreparable harm to Marriott and the public.  The harm to Marriott includes harm to the value and goodwill associated with the MARRIOTT Marks for which monetary relief will not suffice.  Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

## COUNT THREE:
### (False Designation of Origin)

77.     Marriott repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

78.     The copying and/or use by Defendants of Marriott's name and the MARRIOTT Marks constitute a false designation of origin that wrongly and falsely designates that goods marketed and sold by Defendants now, or in the future, originate from or are connected with, authorized by, or otherwise associated with Marriott.

79.     The above acts by Defendants constitute false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

80.     The foregoing actions of Defendants have been knowing, deliberate, willful, and in utter disregard of Marriott's rights.

81.     The foregoing actions of Defendants have caused great and irreparable injury to Marriott and, unless said acts are enjoined by this Court, said acts will continue and Marriott and Marriott's customers will continue to suffer great and irreparable injury for which monetary relief will not suffice.

## COUNT FOUR:
### (False Advertising)

82.     Marriott repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

83.     The use by Defendants of Marriott's name and the MARRIOTT Marks in robocalls constitutes literal false or misleading representations of fact that the products sold by Defendants are indeed not sponsored by, approved by, or certified by Marriott.

84.     The use by Defendants of Marriott's name and the MARRIOTT Marks in robocalls constitutes literal false or misleading representations of fact that Defendants and Marriott are affiliated in some manner.

85.     Defendants are using these false representations in order to influence consumer's purchasing decisions by using Marriott's widespread popularity.

86.     By placing robocalls to consumers throughout the United States, Defendants placed the false or misleading statement into interstate commerce.

87.     Defendants' acts have diverted sales away from Marriott.

88.     Defendants' acts have also damaged Marriott's goodwill associated with such promotional packages.

89.     The above acts by Defendants constitute false advertisements in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

90.     The foregoing actions of Defendants have been knowing, deliberate, willful, and in utter disregard of Marriott's rights.

91.     Defendants' conduct has caused irreparable damage to Marriott's business, reputation and, unless said acts are enjoined by the Court, said acts will continue and Marriott and the consuming public will continue to suffer great and irreparable injury for which monetary relief will not suffice.

## <u>COUNT FIVE:</u>
**(Telemarketing Sales Rule, Deceptive Telemarketing Acts or Practices, 16 C.F.R. § 310.3)**

92.     Marriott repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

93.     Defendants engaged in deceptive telemarketing practices by misrepresenting its affiliation with, endorsement, or sponsorship by falsely claiming to be affiliated with Marriott.

94.     The above acts by Defendants constitute deceptive telemarketing practices in violation of 16 C.F.R. § 310.3(2)(vii).

95.     Marriott has suffered not less than $50,000.00 in actual damages due to Defendants' misconduct.  *See* 15 U.S.C. § 6104(a) (authorizing individuals adversely affected by any pattern or practice of telemarketing, within three years of the discovery of the violation, and in the event the amount in controversy exceeds $50,000.00, to file suit in federal district court).

96.     Defendants' conduct has caused irreparable damage to Marriott's business, reputation, and goodwill, and, unless said acts are enjoined by the Court, said acts will continue and Marriott and the consuming public will continue to suffer great and irreparable injury for which monetary relief will not suffice.

## COUNT SIX:
### (Telemarketing Sales Rule, Abusive Telemarketing Acts or Practices, 16 C.F.R. § 310.4)

97.     Marriott repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

98.     Defendants have engaged in abusive telemarketing practices by initiating outbound telephone calls that deliver a prerecorded message and failing to receive the express consent of the recipient in writing that meets the statutory requirements.  16 C.F.R. § 310.4(b)(v).

99.     Defendants also have failed to make the requisite disclosures in selling goods or services.  Defendants have failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call the true identity of the seller and the nature of the good or service provided.  *See* 16 C.F.R. § 310.4(d)(1) (noting "the identity of the seller") and (3) (noting "the nature of the goods or services").

100.    The above acts by Defendants constitute abusive telemarketing practices in violation of 16 C.F.R. § 310.4(d)(1) and (3).

101.    Marriott has suffered not less than $50,000.00 in actual damages due to Defendants' misconduct.  *See* 15 U.S.C. § 6104(a) (authorizing individuals adversely affected by any pattern or practice of telemarketing, within three years of the discovery of the violation, and in the event the amount in controversy exceeds $50,000.00, to file suit in federal district court).

102.    Defendants' conduct has caused irreparable damage to Marriott's business, reputation, and goodwill, and, unless said acts are enjoined by the Court, said acts will continue and Marriott and the consuming public will continue to suffer great and irreparable injury for which monetary relief will not suffice.

### COUNT SEVEN:
### (Virginia Unfair Competition)

103.    Marriott repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

104.    Defendants are misrepresenting to consumers that the goods provided by Defendants are the goods of Marriott in violation of VA. CODE ANN. § 59.1-200(A)(1).

105.    Defendants are misrepresenting to consumers that Defendants' goods are sponsored by, approved by, or certified by Marriott or that Marriott is a source of such goods in violation of VA. CODE ANN. § 59.1-200(A)(2).

106.    Defendants are misrepresenting to consumers that Defendants' goods are affiliated, connected, or associated with Marriott in violation of VA. CODE ANN. § 59.1-200(A)(3).

107.    Defendants are misrepresenting to consumers that Defendants' goods are similar to those of Marriott in terms of standards, quality, grade, style, or model in violation of VA. CODE ANN. § 59.1-200(A)(6).

108.    Defendants' conduct is in violation of VA. CODE ANN. § 59.1-200(A)(14).

109.    The foregoing actions of Defendants have caused great and irreparable injury to Marriott and, unless said acts are enjoined by this Court, said acts will continue and Marriott and the consuming public will continue to suffer great and irreparable injury for which monetary relief will not suffice.

## COUNT EIGHT:
### (Virginia False Advertising)

110.    Marriott repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

111.    Defendants' conduct advertising for Defendants' goods by publishing, disseminating, circulating, or placing before the public information that is untrue, deceptive, or misleading, and/or which uses other methods, devices, or practices which are fraudulent, deceptive or misleading, namely indicating that Marriott endorses, and that Marriott is in any way affiliated with Defendants' robocall scams, causing actual confusion in the marketplace in violation of VA. CODE ANN. § 18.2-216.

112.    Defendants' advertisements, as described above, contain a false representation, which is untrue, deceptive, and misleading.

113.    Defendants have caused such advertisements to be distributed via robocalls to consumers in Virginia.

114.    Defendants' conduct has caused irreparable damage to Marriott's business, reputation, and goodwill, and, unless said acts are enjoined by the Court, said acts will continue and Marriott and the consuming public will continue to suffer great and irreparable injury for which monetary relief will not suffice.

## PRAYER FOR RELIEF

WHEREFORE, Marriott respectfully requests of this Court:

1.      That judgment be entered in favor of Marriott on all counts.

2.      That the Court preliminarily and permanently enjoin Defendants, their officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with them, jointly and severally, from:

      a.      Copying, distributing, altering, displaying, hosting, selling and/or promoting the MARRIOTT Marks;

      b.      Using any copy or colorable imitation of the MARRIOTT Marks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, printing, importation, production, circulation, or distribution of any product or service, in such fashion as to relate or connect such product or service in any way to Marriott, or to any goods or services sold, manufactured, sponsored, approved by, or connected with Marriott;

      c.      Using robocalls to reference, copy, distribute, and/or promote Marriott's name or the MARRIOTT Marks; and

      d.      Engaging in any other activity constituting unfair competition with Marriott or constituting an infringement of the MARRIOTT Marks.

3.      That those in active concert or participation with Defendants and those with notice of the injunction, including without limitation any Internet search engines, web-hosting and Internet-service providers, domain-name registrars, and domain-name registries, cease facilitating access to any or all domain names and websites or accounts through which Defendants engage in unlawful access to, use, reproduction, and distribution of the MARRIOTT Marks and/or seek to deceive consumers regarding their relationship with Marriott;

4.      That the domain-name registries and registrars for the domain names associated with Defendants and any other domain names or websites used by Defendants to deceive

consumers regarding their relationship with Marriott, or their administrators, place the domain names on registryHold/serverHold or such other status to render the names/sites non-resolving;

5.      That Defendants be required to pay Plaintiff's statutory damages pursuant to 15 U.S.C. § 1117(c), 15 U.S.C. § 6104(a), and 17 U.S.C. § 504(c);

6.      That actual and compensatory damages be awarded in favor of Marriott against Defendants;

7.      That Defendants be required to disgorge all revenues earned from the operation of robocalls containing counterfeit MARRIOTT Marks;

8.      That the Court order an award of costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a), 15 U.S.C. § 6104(d), 17 U.S.C. § 505, or as otherwise permitted by law, incurred by Marriott in connection with this action;

9.      That Marriott be awarded pre-judgment interest and post-judgment interest on the above damages awards; and

10.      That the Court order an award to Marriott of such other and further relief as the Court may deem just and proper.


Dated: May 18, 2021                          MARRIOTT INTERNATIONAL, INC.
                                             By counsel


                             By:      /s/ *Attison L. Barnes, III*
                                      Attison L. Barnes, III (VA Bar No. 30458)
                                      David E. Weslow (for *pro hac vice*)
                                      Kevin G. Rupy (for *pro hac vice*)
                                      Duane C. Pozza (for *pro hac vice*)
                                      Stacey J. LaRiviere (VA Bar No. 92354)
                                      WILEY REIN LLP
                                      1776 K St. NW
                                      Washington, DC 20006
                                      Tel: (202) 719-7000

abarnes@wiley.law
dweslow@wiley.law
krupy@wiley.law
dpozza@wiley.law
slariviere@wiley.law

*Counsel for Plaintiff*
*Marriott International, Inc.*