IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARRIOTT INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOES 1–10, <br><br> Defendants. | Civil Action No. 1:21-cv-00610-AJT/JFA |

**PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE**

Plaintiff Marriott International, Inc. ("Marriott"), by counsel, hereby responds to the Order to Show Cause issued by this Court on October 26, 2021 (Dkt. 10), and states that Marriott has engaged in extensive efforts to investigate a tangled web of potential parties responsible for tens of millions of robocalls unlawfully infringing on Marriott's brand name. As more fully set forth below, since the filing of this Complaint, Marriott's efforts have included *service of more than twenty (20) subpoenas covering domestic and international actions and data* in an effort to halt and identify the John Doe defendants. To ensure that Marriott has sufficient time to fully enforce the subpoenas and to analyze the *millions of data points produced by the subpoenaed parties*, Marriott respectfully requests, pursuant to Fed. R. Civ. P. 4(m) and for the good cause set forth below, an additional sixty (60) days until January 3, 2021, to provide the Court with a further status report apprising the Court of Marriott's position regarding the identify the Doe Defendants or, alternatively, Marriott will file an amended complaint and motion for alternative service on certain John Does identified through this process.

**Rise of the Robocall and Case Background**

1. On May 18, 2021, Marriott filed its Complaint in the above-referenced action

addressing numerous, unlawful robocall scams that violate consumers' rights and infringe upon Marriott's goodwill and valuable trademark rights. Dkt. 1.

2. "Telemarketing is big business," and while "[t]hese calls are obviously effective" they are made at the consumers' expense. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 648-49 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 676. Telemarketing calls "interfere with [consumers'] lives, tie up [] phone lines, and cause confusion and disruption on phone records." *See* Dkt. 1 ¶ 26 (quoting *Krakauer*, 925 F.3d at 649). Robocalls are a specific type of telemarketing that is particularly egregious given the deception involved and the confusion and harm that result. *See id.* ¶ 27. And in comparison to live calls, "Congress determined that unwanted prerecorded voice message calls (a type of robocall) are a greater nuisance and invasion of privacy . . . ." *In re Spiller, et al.*, FCC Rcd. 21-35, at 2 (Mar. 18, 2021).

3. To combat the practices of robocallers, the Federal Communications Commission ("FCC") and the Federal Trade Commission ("FTC") have promulgated rules, *see* Dkt. 1 ¶ 33. The FTC has independent authority under the Telemarketing Sales Rule, 16 C.F.R. § 310 *et seq.*, which "impose[s] several restrictions on telemarketers—requiring them, inter alia, to make certain disclosures, obey time restrictions, and refrain from calling consumers who have asked not to be called by that particular seller." Dkt. 1 ¶ 33 (quoting *Nat'l Fed'n of the Blind v. F.T.C.*, 420 F.3d 331, 334 (4th Cir. 2005)).

4. Another outgrowth of both statutes and rule promulgations was the National Do-Not-Call Registry. Dkt. 1 ¶ 32. Barring specific exceptions, consumers seeking to prevent telephone solicitations add their telephone number to the registry, which triggers restrictions on subsequent telemarketing. Dkt. 1 ¶ 32 (citing *Krakauer*, 925 F.3d at 649). Regulations, "subject to certain exceptions, [make it illegal] for persons or entities (including advertisers and marketers)

to make telephone solicitations to residential numbers listed on the Registry." *In re Affordable Enters. of Arizona, LLC*, FCC Rcd. 20-149 (Oct. 28, 2020), at 2. In addition, companies "are expected to keep individual Do-Not-Call lists, reflecting persons who have directly told the company that they do not wish to receive further solicitations." *Krakauer*, 925 F.3d at 649.

5. Although Congress sought to control robocalls by enacting this new regulatory scheme, the robocalling epidemic persists likely due to the ease and minimal expense these robocall scams cost to run. Steven Melendez, *Why a $120 Million Fine Can't Stop the 'Insane' Growth of Phone Spam*, Fast Company (May 16, 2018), https://www.fastcompany.com/40572440/why-a-120-million-fine-cant-stop-the-insane-growth-of-phone-spam (quoting YouMail CEO Alex Quilici (noting that it now costs "one-tenth of a cent per minute to make a call if someone connects")). According to the FTC and based solely on *reports made* to the Consumer Sentinel Network, last year, for phone scams related to travel, vacations and timeshare plans, American consumers lost $175 million. FTC, Consumer Sentinel Network Data Book 2020 at 12 (2021), https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book2020/csn_annual_data_book_2020.pdf.

6. Recently, the Department of Justice acknowledged that "robocalls remain a significant consumer protection problem and one of consumers' top complaints to the [FTC]." Dkt. 1 ¶ 40 (quoting DEP'T OF JUSTICE, TELEPHONE ROBOCALL ABUSE CRIMINAL ENFORCEMENT AND DETERRENCE ACT 2020 REPORT TO CONGRESS, 5 (2020) [hereinafter "DOJ Report"], https://www.justice.gov/opa/press-release/file/1331576/download).

7. The FCC has aggressively prosecuted robocallers and issued record-breaking forfeiture orders to deter this illegal conduct. *See, e.g.*, Dkt. 1 ¶¶ 35-36 (citing *In re Spiller*, FCC

Rcd. 21-35 (imposing $225,000,000 forfeiture); *In re Abramovich, et al.*, FCC Rcd. 18-58 (May 10, 2018) (imposing $120,000,000 forfeiture)). Over the last few years, both the FCC and the FTC have issued multiple cease-and-desist letters to companies involved in transmitting illegal robocalls. *See e.g.*, *id.* ¶ 37.

8. Despite these staggering consequences, the epidemic of illegal and fraudulent robocalls rages on. As of September of 2021, over 1 billion robocalls were placed to individual and entities in Virginia. NATIONAL CONSUMER LAW CENTER, Historical Robocalls by Time for Virginia (2021), https://robocallindex.com/history/time/virginia.

9. With respect to the robocalls at issue in this case, for the past several years, consumers have reported receiving a significant increase of spoofed robocalls offering vacation packages, including to Mexico and the Caribbean. The calls appear as local numbers on caller ID systems, often tricking consumers into answering. When a consumer picks up the call, they generally hear a prerecorded message prompting them to "Press 1" for more details about a vacation deal offered by a well-known travel or hospitality company such as TripAdvisor, Expedia, Marriott, or Hilton.

10. By flouting these well-known travel or hospitality companies' names and falsely claiming a connection to or an affiliation with these well-known travel or hospitality companies, robocallers attempt to establish legitimacy of their promotion and seek to induce consumers to remain on the line. Dkt. ¶ 42. After pressing one, consumers are transferred to a call center and speak to a customer service representative ("CSR"), unaffiliated with the companies previously noted, who then markets vacation packages.

11. Through its investigation, Marriott discovered multiple robocall scams wherein robocallers misuse Marriott trademarks without authorization to deceive confused consumers into

purchasing vacation packages of unknown quality that are not marketed by, sold by, endorsed by, or otherwise associated with Marriott. Dkt. 1 ¶¶ 43, 49. The robocallers made at least 530,000 calls to consumers in this District between October 2020 and March 2021 alone. *See* Dkt. 1 ¶ 50. Various iterations of the deceptive robocall scams at issue in this case include:

> ***Thank you for choosing Marriott hotels***, we would like to inform you that because you have stayed at one of our properties ***your telephone number was qualified by our booking system*** to receive an all[-]inclusive complimentary today for further details press zero now; to be placed on the do-not-call list[,] press two now.
>
> ***Thank you for choosing Marriott hotels***, we would like to inform you that thanks to the ***friends and family rewards program, your membership was drawn*** to receive a complimentary stay; for further details, press one now; to be placed on the do-not-call list, press two now.
>
> Hi[,] this is an ***exclusive announcement from Marriott Hotel***. Your ***telephone number has been pre-selected*** to receive a complimentary stay in one of our five[-]star hotels for further details[,] press one now.

Dkt. 1 ¶ 43.

12. In the robocall scams misusing the Marriott trademarks, the robocallers often state that the consumer qualified for the promotion because he or she was either a member of Marriott's loyalty program, or stayed at a Marriott brand hotel or resort, or was recommended to receive the promotion, and the robocallers often refer to toll-free numbers and/or supporting websites in an apparent attempt to legitimize the calls. Dkt. 1 ¶ 44.

13. Therefore, Marriott has brought this lawsuit advancing, *inter alia*, TSR claims to shield consumers from abusive and deceptive telemarketing practices and to protect its own goodwill. This is a first-of-its-kind complaint given that actions to enforce the TSR and related regulations are generally initiated by regulatory bodies or states' attorneys general. And when individuals file suit, the individual files suit on the behalf of themselves or a class. *See, e.g.*, *Bryan v. RCI, LLC*, No. 1:21-cv-00291 (N.D. Ohio Feb. 3, 2021), Dkt. 1 (Individual files class action for

defendant's telemarketing using prerecorded and/or artificial voice in violation of the TCPA.); *Winters, et al. v. Grand Caribbean Cruises, Inc.*, No. 2:20-cv-00168 (D. Ariz. Mar. 9, 2020), Dkt. 10 (Individual filed class action against defendant for calling plaintiff's cellphone and/or landline using an autodialer in violation of the TCPA.); *Miceli v. Southwind Mgmt. Corp., et al.*, No. 20-cv-1231 (D.N.M. Nov. 24, 2020), Dkt. 1 (Individual filed suit in response to robocalls and alleged violations of the TCPA and TSR.); *Thomas v. Spinnaker Resorts, Inc. and Travel Smart, LLC*, No. 4:20-cv-03946 (S.D. Tx. Feb. 10, 2021), Dkt. 13 (Individual files suit on own behalf for defendant's illegal use of automatic telephone dialing systems while telemarketing); *Thurber v. Spinnaker Resorts, Inc.*, No. 3:17-cv-04914 (D.N.J. July 5, 2017), Dkt. 1 (Individual files on his own behalf against defendant for using an automatic telephone dialing system and or pre-recorded messaging in violation of the TCPA.); *Cardenas v. Spinnaker Resorts, Inc.*, No. 16-2466 (D.N.J. May 2, 2016), Dkt. 1 (Individual files class action in response to autodialed calls and alleges violations of TCPA.); *Hudak v. Berkley Grp., Inc.*, No. 3:13-cv-00089 (D. CT. Jan 18, 2013), Dkt. 21 (Individual filed suit for violations of the TCPA).

14. Marriott and its customers have suffered, and continue to suffer, substantial harm at the receiving end of the Doe Defendants' illicit robocalls. The robocalls were and are: (a) harassing to Marriott customers and the general public, (b) disturbing the daily lives of Marriott customers and the general public, (c) disseminating false statements about purported employment with or an affiliation with Marriott to induce Marriott customers and the general public to remain on the line and purchase the promotion, (d) persuading Marriott customers and the general public to purchase a promotion of unknown quality from an unknown entity, and (e) confusing Marriott customers and the general public, and misleading them into falsely believing there is a relationship between Marriott and Defendants. *See* Dkt. 1 ¶ 62. In addition, Doe Defendants' wrongful trading

on Marriott's name and marks damaged Marriott and will continue to subject Marriott to the following harms: (a) Marriott customers and the general public directed their frustration about the robocalls to Marriott, thereby (b) burdening Marriott's complaint process, (c) causing Marriott to expend resources to resolve such complaints, and (d) exposing Marriott to litigation. *See* Dkt. 1 ¶ 63. Indeed, Marriott was improperly named as a party in a federal lawsuit in Texas for claims similar to those Marriott has alleged against the Doe Defendants in this Complaint. *See Pepper v. Sun Palm Vacations, et al.*, No. 4:21-cv-03221 (S.D. Tx. 2021) (suing Marriott, and other entities unaffiliated with Marriott, in connection with robocalls marketing vacation packages).

15. The Doe Defendants who are perpetrating the robocall scams at issue in this case have undertaken great efforts to conceal their identity. The Doe Defendants have employed "private" domain name registration services and submitted false or misleading identification information to service providers. *See* Dkt. 4, pp. 3, 7. The Doe Defendants have provided "false names and physical address information . . . in order to conceal their location [and identities] and avoid liability for their unlawful conduct." *Tory Burch LLC and River Light V, L.P. v. P'ship & Unincorp. Assoc'n Identified on Schedule A*, No. 13-cv-2059, 2013 WL 1283824, at *9 (N.D. Ill. Mar. 27, 2013); *see id.* at *1 (involving allegations regarding defendants who "knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions. . . through the use [of] hundreds of interactive commercial websites and online marketplaces").

16. The Doe Defendants' extensive efforts to conceal their identities have required Marriott to issue more than twenty (20) subpoenas to obtain as much identifying information as possible to unmask the true responsible parties.

17. While much progress has been made, Marriott's investigation into the identities of

the Doe Defendants remains ongoing. During the course of the investigation, Marriott has determined that some potential Doe Defendants appear to have complex and intertwined relationships with one another, and that current leads suggest that there are other potential Doe Defendants to be identified. Marriott can only make these determinations through additional investigation and further analysis of documentation produced and to be produced in response to subpoenas. Marriott believes that public release of too much information at this stage could significantly hinder its ability to identify additional Doe Defendants, to uncover the respective relationships between potential Defendants, and to obtain full compliance with outstanding subpoenas to third parties. Given the potential for an adverse impact to Marriott (and consumers in this District) that such disclosure would likely have to the ongoing investigation efforts, Marriott does not believe it can, at this time, disclose on the public docket the results of its investigation. To the extent the Court desires, Marriott will supply additional information in camera upon request, but believes the discussion herein supplies the necessary good cause.

### **Discovery Efforts**

18. In its efforts to move expeditiously in this matter, Marriott simultaneously filed its Complaint as well as a Motion for Leave to Take Discovery Prior to Rule 26(f) Conference, to uncover the identity of the Doe Defendants. In the Motion, Marriott sought leave to issue subpoenas to telephone-gateway service providers, toll-free number issuers, domain-name registrars, website hosts, privacy services, and other entities used by Defendant Does to effectuate this illegal scheme, for the limited purpose of identifying the Doe Defendants. Dkt. Nos. 3 and 4.

19. On May 24, 2021, the Court issued an order permitting Marriott to "immediately serve Rule 45 subpoenas to telephone-gateway service providers, toll-free number issuers, and domain-name registrars, website hosts, and privacy services, and other entities providing services

to Defendants John Does 1-10 to identify their names, addresses, telephone numbers, payment mechanisms, and any email addresses or other identifying attributes." *See* Dkt. 9.

20. To counter the Doe Defendants' efforts to conceal their identities, Marriott has diligently pursued the discovery of their identities by serving no less than 23 subpoenas (and based on information provided in response to prior subpoenas, Marriott is in the process of serving multiple follow-up subpoenas) including subpoenas to: (1) the domain name registrar (GoDaddy.com, LLC) associated with the Doe Defendants' ten infringing websites; (2) "private" registration services (Domains by Proxy and secureserver.net) used to conceal the identity of the Doe Defendants operating the domain names attached to the infringing websites; (3) two telephone-gateway service providers; (4) toll-free number issuers and RespOrgs, which are companies that maintain the registration for individual toll-free telephone numbers (Bandwidth, Verizon, RingCentral, Five9, Inc., Voxeo, Incontact, Inc., Intrado Communications, LLC, Genesys Cloud Services, Century Link, and Telengy, LLC); (5) other entities identified by Marriott as providing services to, and/or helping carry out, the Doe Defendants' scam, which included a payment processor, a timeshare resort operator, and the telemarketers associated with the timeshare resort operator; and (6) the Industry Traceback Group, which is the FCC's registered Traceback Consortium.

21. Marriott received responses from the registrar GoDaddy.com, LLC; the privacy service Domains by Proxy; telephone-gateway service providers; toll-free number issuers and RespOrgs Bandwidth, Verizon, RingCentral, Inc., Intrado Communications, LLC, Lumen, and Telengy, LLC (now Callcentric Wholesale, Inc.), and other entities providing services, including the Better Business Bureau, a payment processor, and the Industry Traceback Group.

22. The Better Business Bureau timely responded by producing numerous documents on July 28, 2021, including complaints attached to a potential Doe Defendant in this case. Marriott conducted multiple witness interviews of a subcategory of complainants to further identify the extent of that Doe Defendant's conduct targeting Marriott.

23. A majority of the subpoenaed entities that responded requested or advised that additional time was necessary to comply with the subpoena. Both GoDaddy.com and Domains by Proxy notified Marriott that requests are processed in the order they are received and responses take more than 30 days. Marriott followed up with GoDaddy.com and Domains by Proxy and supplied FTP links to enable both entities to securely transmit documents to Marriott. Both entities ultimately furnished responses nearly one month beyond the date set forth in the subpoena, and produced numerous data points that will be of assistance in identifying the registrants of the infringing websites, and Marriott continues to diligently follow the trails.

24. Given that the domain name registrant information produced is likely misleading or false, *see infra* p. 7, Marriott served additional subpoenas on toll-free number issuers, RespOrgs and service-related entities Doe Defendants used to effectuate the robocall scams. A payment processor for foreign timeshare resorts requested an extension to produce until August 15. The payment processor furnished a preliminary response and advised they have records for 14,000 members and guests associated with covered resorts. The payment processor produced servicing agreements with various resorts and a loyalty program on September 20, 2021. Marriott has continued to confer with the payment processor and received subsequent productions from the company on October 4 and 9, 2021. Another service provider, Verizon, requested an extension of the subpoena response time period and recently provided subscriber information associated with specific telephone numbers connected to the infringing websites.

25. Additionally, entities producing Call Detail Records ("CDR") have disclosed significant amounts of raw data, review of which has and will continue to take significant time and additional resources. CDRs are critical in determining the identity of the Doe Defendants given that they provide detailed information about each call's point of origin, the telephone numbers of the callers themselves, as well as the date, time, and duration of each call. Four telephone service providers *collectively produced about 1.2 billion CDRs* to undersigned counsel. Marriott has expended additional resources in retaining the services of third parties, including a consultant and YouMail, to efficiently and effectively analyze these voluminous CDRs.

26. And most recently, the Industry Traceback Group made a production on October 20, 2021. The Industry Traceback Group is the official traceback consortium designated by the FCC, and it traces and identifies the source of illegal robocalls by coordinating with voice service providers along the call path to determine the originator of the illegal robocalls. The Industry Traceback Group produced further information (e.g. the Direct Interconnect Provider, Traceback Information, Called Number, and Caller ID) on nearly 60 specific targeted calls.

27. Marriott received either no response or a refusal to respond from secureserver.net, Voxeo Corporation and inContact, Inc. To date, inContact, Inc. refused to comply with the subpoena which will likely require further action by Marriott.

28. Marriott received objections from Five9, Inc., Genesys Telecommunications Laboratories, Inc., an operator of a timeshare resort and its affiliated telemarketers, and has thereafter attempted to reach a compromise regarding the objections. Prior to furnishing their objections, many of these entities also requested or advised that additional time was necessary to comply with the subpoena.

29. Five9, Inc. requested an extension to respond to the subpoena. Marriott agreed, but only with the understanding that responsive documents would be produced on that date. Five9 furnished broad objections to the subpoena but did provide subscriber information for the phone numbers listed in the subpoena that were under its control. Genesys Telecommunications Laboratories, Inc. also sought an extension, and Genesys also furnished broad objections and claimed they had no responsive documents. Marriott has conferred with Genesys in the hopes of obtaining responsive documents without court intervention.

30. With respect to the operator of the timeshare resort and its affiliated telemarketing entities (collectively "Resort entities"), counsel for the Resort entities also delayed responses to Marriott's subpoenas buy serving broad objections to the subpoenas. After several communications with counsel for the Resort entities, Marriott presented written demands for the Resort entities to cure the various deficiencies in their objections and responses. Over the past several weeks, the Resort entities have not withdrawn their objections and continue to refuse to produce responsive documents. Should the Resort entities remain noncompliant, Marriott must consider the proper course for pursuing orders compelling these entities to comply with the subpoenas.

31. Assembling and analyzing the various information received in response to the subpoenas over the last several months, Marriott has worked and continues to work diligently to identify individuals to be served and potential physical addresses to effectuate service. Although not all subpoenaed entities have responded, Marriott has, to date, identified three categories of putative defendants. First, Marriott discovered potential domestic defendants—those with U.S. physical addresses that are valid. Second, Marriott discovered foreign defendants associated with valid foreign physical addresses. Third, Marriott identified the addresses or names for several of

the defendants but is currently unable to validate those persons' identities and/or physical addresses without further investigation.

33. Based on these facts, Marriott requests additional time to complete its investigation. Under Fed. R. Civ. P. 4(m), the Court should extend the time for service upon a showing of good cause. Here, Marriott is proceeding diligently to identify the John Doe Defendants. Although Marriott's efforts were hindered by numerous requests for extension, voluminous document productions, and objections that may require Marriott to file motions to compel, Marriott seeks an additional sixty (60) days until January 3, 2021, to pursue fulsome responses from critical, noncompliant subpoenaed entities and to complete the follow-on subpoenas. At that time, Marriott proposes to file a further status report apprising the Court of Marriott's continuing efforts to identify the Doe Defendants or, alternatively, Marriott will file an amended complaint and motion for service on certain John Does that have been identified through this process.

## CONCLUSION

For the foregoing reasons, Plaintiff Marriott International, Inc, requests that the Court extend the time for service pursuant to Fed. R. Civ. P. 4 and grant such further relief as this Court deems proper.

Dated: November 5, 2021  MARRIOTT INTERNATIONAL, INC.
By counsel

By: /s/ *Attison L. Barnes, III*
Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (for *pro hac vice)*
Kevin G. Rupy (for *pro hac vice*)
Duane C. Pozza (for *pro hac vice*)
Stacey J. LaRiviere (VA Bar No. 92354)
WILEY REIN LLP
1776 K St. NW
Washington, DC 20006

13

Tel: (202) 719-7000
abarnes@wiley.law
dweslow@wiley.law
krupy@wiley.law
dpozza@wiley.law
slariviere@wiley.law

*Counsel for Plaintiff
Marriott International, Inc.*