IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARRIOTT INTERNATIONAL, INC., <br><br>    Plaintiff, <br><br> v. <br><br> JOHN DOES 1–10, <br><br>    Defendants. | Civil Action No. 1:21-cv-00610-AJT/JFA |

### PLAINTIFF'S STATUS REPORT

Plaintiff Marriott International, Inc. ("Marriott"), by counsel, provides this Status Report pursuant to this Court's Order dated November 11, 2021 (Dkt. 12).  As set forth in detail below, Marriott continues to engage in extensive efforts to investigate a complex and tangled web of multiple international and domestic entities, all potential parties responsible for tens of millions of robocalls that infringe on Marriott's brand name, while also causing significant disruption to consumers' phone lines and, in certain instances, substantial consumer monetary loss.  Since Plaintiff's Report to the Court on November 5, 2021 (Dkt. 11), Marriott's efforts have included service of an additional <u>nine</u> subpoenas to recently identified domestic and international entities.  Based on information provided in response to prior subpoenas, Marriott is also in the process of preparing and serving up to <u>twenty</u> additional subpoenas to more domestic and international entities.  Undersigned counsel has also interviewed nearly a dozen witnesses in an effort to identify the John Doe defendants and plans to interview additional witnesses in the next few weeks.

Marriott has experienced some resistance from subpoena recipients who may be affiliated with the John Doe Defendants.  To ensure that Marriott has sufficient time to fully enforce the subpoenas (in multiple jurisdictions) and to analyze the *millions of data points produced by the*

*domestic and international subpoenaed parties*, Marriott respectfully requests, pursuant to Fed. R. Civ. P. 4(m) and for the good cause set forth below, until March 31, 2022, to provide the Court with a further status report (and/or to appear for a status conference if the Court prefers), apprising the Court of Marriott's position regarding pursuit of the Doe Defendants.

## Case Background

1. As the Court is aware, Marriott brought this novel lawsuit to shield consumers from abusive and deceptive telemarketing practices and to protect its own goodwill. *See id*. ¶ 13 (string cite). Marriott and its customers have suffered substantial harm at the receiving end of the Doe Defendants' illicit robocalls. *See id*. ¶ 14.

2. The Doe Defendants who are perpetrating the robocall scams at issue in this case have undertaken great efforts to conceal their identity, including by using privacy services, illegally spoofing telephone numbers associated with their illegal robocalls, supplying false or misleading identification information to service providers, and working through multiple layers of intermediaries. *See id*. ¶ 15-16.

3. The Doe Defendants' extensive efforts to conceal their identities have required Marriott to issue over thirty (30) subpoenas to obtain as much identifying information as possible to unmask the true responsible parties.

4. While much progress has been made, Marriott's investigation into the identities of the Doe Defendants continues. During the course of the investigation, Marriott has determined that some potential Doe Defendants appear to have intertwined relationships with one another, and current evidence suggests that other potential Doe Defendants are involved. With respect to the potential Doe Defendants Marriott has identified, they include entities based outside of the United States who are targeting U.S. consumers including consumers in the District. In analyzing these

entities' relationships, Marriott has reviewed and analyzed, *inter alia*, over one billion Call Detail Records ("CDRs")[1] from various service providers, contracts, payment records, and communications between consumers and entities. These voluminous CDRs obtained from multiple voice service providers reflect inbound and outbound calls from telephone numbers within and outside of the United States. Marriott has learned that numerous live customer service representatives ("CSRs") behind the calls advise that they are affiliated with domestic, international, or both domestic and international entities, and that they themselves are either located in or outside of the United States. As part of the scam, the CSRs advertise stays at resorts located in and outside of the United States. A subset of those consumers ultimately purchased packages or promotions, and some have disclosed payment records, which reflect that payments have been routed through U.S.-based payment processors or payment processors located abroad. Marriott confirmed this information through multiple witness interviews and from evidence obtained from victims. Marriott can only identify other connections and untangle this complex web of relationships through additional investigation and further analysis of documentation produced and to be produced in response to subpoenas.

5. Marriott continues to believe that public release of too much information at this stage could significantly hinder its ability to identify additional Doe Defendants, to uncover the respective relationships between potential Defendants, and to obtain full compliance with outstanding subpoenas to third parties. Given the significant potential for an adverse impact to Marriott (and consumers in this District) that such disclosure would likely have to its ongoing investigation efforts, Marriott does not believe it can, at this time, disclose on the public docket

---

[1] CDRs are critical in determining the identity of the Doe Defendants given that they provide detailed information about each call's point of origin, the telephone numbers of the callers themselves, as well as the date, time, and duration of each call.

the results of its investigation. To the extent the Court desires, Marriott will supply additional information *in camera* upon request, but believes the discussion herein supplies the necessary good cause.

### Discovery Status

6. In its efforts to move expeditiously in this matter, Marriott simultaneously filed its Complaint as well as a Motion for Leave to Take Discovery Prior to Rule 26(f) Conference, to uncover the identity of the Doe Defendants. Dkt. Nos. 3 and 4.

7. On May 24, 2021, the Court granted Marriott's motion, permitting Marriott to "immediately serve Rule 45 subpoenas to telephone-gateway service providers, toll-free number issuers, and domain-name registrars, website hosts, and privacy services, and other entities providing services to Defendants John Does 1-10 to identify their names, addresses, telephone numbers, payment mechanisms, and any email addresses or other identifying attributes." *See* Dkt. 9.

8. To counter the Doe Defendants' efforts to conceal their identities, Marriott has diligently pursued the discovery of their identities by serving no less than 32 subpoenas including subpoenas to: (1) the domain name registrar (GoDaddy.com, LLC) associated with the Doe Defendants' ten infringing websites; (2) a website hosting service associated with a timeshare exchange operator (Nocix, LLC); (3) "private" registration services (Domains by Proxy and secureserver.net) used to conceal the identity of the Doe Defendants operating the domain names attached to the infringing websites; (4) two telephone-gateway service providers; (5) three carriers (AT&T, T-Mobile, and Verizon); (6) toll-free number issuers and RespOrgs, which are companies that maintain the registration for individual toll-free telephone numbers (Bandwidth, RingCentral, Five9, Inc., Voxeo, Incontact, Inc., Intrado Communications, LLC, Genesys Cloud Services,

Century Link, CallCentric, Inteliquent, Syndeo, LLC); (7) other entities identified by Marriott as providing services to, and/or helping carry out, the Doe Defendants' scam, which included a payment processor, several timeshare resorts, timeshare exchanges, and timeshare reservation operators, and the telemarketers associated with one of the timeshare resort operators; and (8) the Industry Traceback Group, which is the FCC's registered Traceback Consortium.

9. Of the subpoenas served since Marriott's most recent filing, Marriott received responses from carriers AT&T, T-Mobile, and Verizon, RespOrgs Inteliquent and Syndeo, LLC, and entities providing services to timeshare resort operators.

10. One entity providing services to timeshare resort operators requested additional time due to the intervening holiday. Marriott agreed, but only with the understanding that responsive documents would be produced on that date.

11. All three carriers, AT&T, T-Mobile, and Verizon timely responded by producing subscriber information. Marriott is cross-referencing this subscriber information with the approximately *1.2 billion CDRs* now in its possession. During the complex cross-referencing process, Marriott has discovered inbound and outbound calls to potential Doe Defendants, as well inbound calls from consumer victims of the scam to the potential Doe Defendants. Of this latter subcategory of individuals, Marriott is beginning to conduct and has conducted in-depth witness interviews to determine whether these individuals were victims or are intertwined in the scams themselves. Through its review of this voluminous CDR data, Marriott has also identified individual illegal robocalls misappropriating the Marriott name that can be directly tied to impacted consumer victims and the Doe Defendants.

12. As of today, Marriott awaits additional responses from entities providing services to timeshare resort operators.

13. Marriott is also in the process of serving a subpoena on an entity located outside of the United States that reserves rooms at timeshare resorts and had the subpoena translated into the recipient's native language.

14. And now, a formerly compliant payment processor who produced over 1,000 pages to Marriott, now objects to Marriott's subpoena, contending that the subpoena subjects the payment processor to "undue burden." Accordingly, Marriott needs additional time to address this discovery dispute. Marriott continues to confer with the payment processor in the hopes of obtaining responsive documents without court intervention.

15. Additionally, a gateway provider recently requested that the case be transferred to another jurisdiction. Marriott has undertaken several unsuccessful attempts to engage with counsel in the hopes of obtaining responsive documents without court intervention.

16. Assembling and analyzing the various information and data points received in response to the subpoenas over the last several months, Marriott has worked and continues to work diligently to identify individuals to be served and potential physical addresses to effectuate service. Although not all subpoenaed entities have responded, Marriott has, to date, identified three categories of putative defendants. First, Marriott discovered potential domestic defendants—those with U.S. physical addresses that are valid. Second, Marriott discovered foreign defendants associated with valid foreign physical addresses. Third, Marriott identified the addresses or names for several of the defendants but is currently unable to validate those persons' identities and/or physical addresses without further investigation.

17. Based on these facts, Marriott requests additional time to complete its investigation. Under Fed. R. Civ. P. 4(m), the Court should extend the time for service upon a showing of good cause. Here, Marriott is proceeding diligently in a highly complex and first-of-its kind complaint

to identify the John Doe Defendants. Although Marriott's efforts were hindered by requests for extension, document productions, and objections that may require Marriott to file motions to compel, Marriott seeks until March 31, 2022, to pursue fulsome responses from critical, noncompliant subpoenaed entities and to complete the follow-on subpoenas. At that time, Marriott proposes to file a further status report apprising the Court of Marriott's continuing efforts to identify the Doe Defendants or, alternatively if the Court prefers, Marriott will appear for a status conference to address pursuit of the Doe Defendants with the Court.

## CONCLUSION

For the foregoing reasons, Plaintiff Marriott International, Inc, requests that the Court extend the time for service pursuant to Fed. R. Civ. P. 4 and grant such further relief as this Court deems proper.

Dated: January 3, 2021

MARRIOTT INTERNATIONAL, INC.
By counsel

By:   /s/ *Attison L. Barnes, III*
Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (for *pro hac vice)*
Kevin G. Rupy (for *pro hac vice*)
Duane C. Pozza (for *pro hac vice*)
Stacey J. LaRiviere (VA Bar No. 92354)
WILEY REIN LLP
2050 M St. NW
Washington, DC 20036
Tel: (202) 719-7000
abarnes@wiley.law
dweslow@wiley.law
krupy@wiley.law
dpozza@wiley.law
slariviere@wiley.law

*Counsel for Plaintiff
Marriott International, Inc.*