IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MARRIOTT INTERNATIONAL. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-610 (AJT/JFA) |
| | ) | |
| DYNASTY MARKETING GROUP | ) | |
| LLC, et al. | ) | **PUBLIC VERSION** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

Marriott International, Inc. ("Marriott") brings this suit against a "tangled web" of entities including timeshare resorts, timeshare resort groups, timeshare exchange companies, timeshare marketing organizations, and their service providers who allegedly devised deceptive robocall scams at the expense of Marriott and consumers. [Doc. No. 22] ("First Amended Complaint" or "FAC") at ¶ 2. One of those Defendants,[1] ResortCom International LLC ("ResortCom"), has filed a Motion to Dismiss for Failure to State a Claim. [Doc. No. 56] (the "Motion"). For the following reasons, the Motion is **DENIED** as to Count X, alleging Assisting and Facilitating Abusive and

---

[1] Other Defendants include: Rapid Eagle, Prestige, and Whisl, American-based voice over internet protocol providers ("VoIP providers"), FAC at ¶¶ 10-12; Dynasty Marketing Group ("DVC"), a Florida timeshare resort marketing entity, *id.* at ¶ 9; Vacancy Rewards, a timeshare vacation exchange website in Florida operating in Florida and Mexico, *id.* at ¶ 13; Cancun Ink Corp., a telemarketer located in Mexico, *id.* at ¶ 14; Parrot Caribbean, a telemarketer located in Mexico, *id.* at ¶ 15; Vallarta Gardens, a timeshare resort located in Mexico, *id.* at ¶ 16; Tafer Resorts ("Tafer" or "Tafer Resorts"), a timeshare resort group located in Mexico, *id.* at ¶ 17; and Defendants John Does, additional persons of unknown identity who were allegedly involved with the robocall scam (collectively, "Defendants"), *id.* at ¶ 19. Rapid Eagle and Whisl have also filed Motions to Dismiss, which the Court will address in a separate Order. *See* [Doc. No. 65].

Deceptive Acts or Practices, 16 C.F.R. § 310.3(b), and **GRANTED** as to all other Counts asserted against ResortCom.

## I. BACKGROUND

Marriott alleges the following in the Amended Complaint:

### A. Overall Scheme

Defendant ResortCom is a provider of timeshare-related services and incorporated in Nevada. FAC. at ¶ 18. From October 12, 2018 to the present, Defendant Group 1, which includes ResortCom,[2] delivered an estimated 71.2 million robocalls purporting to be from Marriott to consumers throughout the United States, with 1.4 million of those calls to individuals in this District. *Id.* at ¶ 23. Mexico-based telemarketers placed an estimated 714,000 campaign-matched calls to consumers in this District between February 2, 2021 and May 16, 2021. *Id.* at ¶ 24. Through this scheme of fraudulent telemarketing robocalls, the Defendants infringed upon MARRIOTT trademarks.[3] *Id.* at ¶ 24, 60.[4] As a result of these robocalls, Marriott customers and other consumers bought vacation packages, marketed by Defendants, and incorrectly believed Marriott was to blame for the robocalls and inferior-quality packages when, in reality, Marriott never authorized any of the Defendants to act on its behalf. *Id.* at ¶¶ 3, 61-70. The Defendants' scheme has harmed Marriott's goodwill and financial standing. *Id.* at ¶¶ 68-70.

---

[2] Marriott sorts the Defendants into two groups. In addition to ResortCom, Defendant Group 1 includes Defendants Vallarta Gardens, Tafer Resorts, Cancun Ink Corp., Parrot Caribbean, Vacancy Rewards, and VoIP providers Whisl and Prestige. *Id.* at ¶ 71.
[3] A list of relevant trademarks can be found at FAC p. 12-16.
[4] Such robocalls included the following language:

> Thank you for choosing Marriott hotels, we would like to inform you that because you have stayed at one of our properties[,] your telephone number was qualified by our booking system to receive an all[-]inclusive complimentary [stay]. [F]or further details[,] press zero now; to be placed on the do-not-call list[,] press two now.

*Id.* at ¶ 60.

**B. Defendant Group 1**

Defendant Group 1 allegedly orchestrated a highly profitable and deceptive robocall scam falsely trading on Marriott's brand to induce consumers located in the United States, including in this District, to purchase vacation packages. *Id.* ¶ 71. These Defendants, Plaintiff alleges, "either directly market vacation packages to consumers in the United States, including Virginia, facilitate such marketing, or obtain the services of third parties, including telemarketers, telemarketing lead providers, and auto dialers, to market the timeshare vacation packages on their behalf." *Id.* at ¶ 72. In this robocall scam, Group 1 Defendants "directly or indirectly market vacation packages at resorts associated with Vallarta Gardens and Tafer Resorts." *Id.* at ¶ 74. In that regard, Marriott points to several examples of the robocalls orchestrated by Defendant Group 1. *See, e.g.*, *id.* at ¶¶ 97-108. For example, one victim, living in Richmond, received "Marriott" robocalls from Defendant Group 1 during June and July of 2021. *Id.* at ¶ 98. The caller referenced Marriott and the victim bought a package which she was told was redeemable at a Marriott in Orlando but instead was rebooked to Club Wyndham Cypress Palms. *Id.*

Regarding ResortCom's relationship with other Defendants, Plaintiff alleges that several board members of an unidentified timeshare exchange company share an address with ResortCom and are affiliated with Tafer Resorts (where the vacation packages were located). *Id.* at ¶ 76. Moreover, Tafer Resorts maintains a broker list including telemarketers associated with websites referenced in the deceptive robocalls, *id.* at ¶ 79, and "Tafer Resorts publicizes its affiliation with ResortCom which it 'collaborate[s] [with] on a daily basis.'" *Id.* at ¶ 78.[5] This "structural overlap[]," Plaintiff alleges, "reflects coordination and shared knowledge." *Id.* at ¶ 75. Plaintiff further alleges that despite awareness by unspecified Defendants "of each other's participation in

---

[5] The FAC includes this in quoted language but it does not provide the quote's origin.

misleading robocalling[,]" the unspecified Defendants "nevertheless maintain relationships with [unspecified] entities that have a history of wrongdoing." *Id.* at ¶ 77.

Plaintiff also alleges that ResortCom knew Defendant timeshare resorts, groups, and exchanges were committing "wrongdoing based on records ResortCom keeps in its normal course of business." *Id.* at ¶ 93. These records consist of the chargeback-related records,[6] *id.* at ¶ 94,

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████[8]

Finally, Marriott alleges that a number of lawsuits should have put ResortCom on notice of wrongful conduct including: *Shelton v. ResortCom Int'l*, LLC, No. 1:19-cv-01378 (N.D. Ohio June 14, 2019) ("Shelton"); *Harris v. Universal Vacation Club*, No. 2:18-cv-03182 (C.D. Cal. April 16, 2018) ("Harris"); and *Pacleb v. ResortCom Int'l LLC*, 2:13-cv-0750 (C.D. Cal. Oct. 1, 2013) ("Pacleb"). *Id.* at ¶ 96.

---

[6] For a definition of a "chargeback," see FAC n.17.

[7] ███████████ FAC at ¶ 95.

[8] The Court is entering two versions of this Order: one public version that is redacted pursuant to the Court's prior Order [Doc. No. 31] relating to Plaintiff's Motion to Seal [Doc. No. 24], and one unredacted version under seal.

**E. Marriott's Response to Deceptive Robocalls**

Before filing its Complaint, Marriott received "an exponential increase" in the amount of complaints about illicit robocall scams which is "diligently reviewed" through internal and external platforms, devoting a considerable amount of resources to resolve the issue. *Id.* at ¶¶ 120-123. Marriott also publicly disavowed the robocalls and asked customers to report them to the FTC. *Id.* at ¶¶123-124.[9] Marriott continued to receive complaints after making this statement. *Id.* at ¶ 125.[10]

Based on these deceptive robocalls, Marriott has asserted claims against ResortCom for (1) contributory trademark infringement (Count III); unfair competition (Count VI); assisting and facilitating abusive and deceptive acts or practices, 16 C.F.R. § 310.3(b) (Count X): unfair competition under Virginia law (Count XI); common law tortious interference (Count XIII); and common law conspiracy (Count XIV).[11]

---

[9] The public statement was as follows:

> Marriott International is aware of pre-recorded telephone calls (often known as "robocalls") that fraudulently reference Marriott's name to entice the call recipient to listen to a sales pitch. Marriott is not making or authorizing these calls. Marriott is committed to protecting the privacy of the personal information that is entrusted to us and has not provided any information to the parties making these fraudulent calls. If you receive a suspicious robocall referencing Marriott, we urge you not to provide any personal or credit card information and to end the call.
> For residents in the U.S., they should report the call to the Federal Trade Commission (FTC). For more information about phone scams, visit the FTC Consumer Information site.
> For Canadian residents, more information on telephone scams can be found on the Canadian Telecommunications Commission's web site.

[10] Marriott also alleges that "a currently unknown actor under investigation" sent malware infected emails to individuals affiliated with the Industry Traceback Group ("ITG"), the FCC's registered Traceback Consortium that aims to stop illegal robocalls, pretending to be an attorney for Marriott in April 2022. *Id.* at ¶¶ 86, 128, n.13.

[11] Overall, Marriot asserts the following claims:

(1) Trademark Counterfeiting against Defendants DVC, Cancun Ink Corp., Parrot Caribbean, Vallarta Gardens, and John Does (Count I), *id.* at ¶¶ 131-39;

(2) Trademark Infringement against Defendants DVC, Cancun Ink Corp., Parrot Caribbean, Vallarta Gardens, and John Does (Count II), *id.* at ¶¶ 140-48;

(3) Contributory Infringement against Defendants **ResortCom**, Whisl, Prestige, Rapid Eagle, Vallarta Gardens, Tafer Resorts, and John Does (Count III), *id.* at ¶¶ 149-54;

(4) False Designation of Origin against Defendants DVC, Cancun Ink Corp., Parrot Caribbean, Vallarta Gardens, and John Does (Count IV), *id.* at ¶¶ 155-61;

(5) Trademark Dilution against Defendants DVC, Cancun Ink Corp., Parrot Caribbean, Vallarta Gardens, and John Does (Count V), *id.* at ¶¶ 162-171;

(6) Unfair Competition against **all Defendants** (Count VI), *id.* at ¶¶ 172-79;

Defendant ResortCom filed the pending Motion on June 22, 2022, [Doc. No. 56], which is opposed by Marriot, [Doc. No. 82] ("Opp.").

## II. LEGAL PRINCIPLES

### A. Rule 12(b)(6)

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This "requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

In considering a Rule 12(b)(6) motion, the Court must construe the complaint, read as a whole, in the light most favorable to the plaintiff and take the facts asserted therein as true. *Iqbal*, 556 U.S. at 678. In addition to the complaint, the Court may also examine documents "attached

---

(7) False Advertising against Defendants DVC, Cancun Ink Corp., Parrot Caribbean, Vallarta Gardens, and John Does (Count VII), *id.* at ¶¶ 180-90;

(8) Violating the Prohibition against Deceptive Telemarketing Acts or Practices, Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108 and Telemarketing Sales Rule, 16 C.F.R. § 310, Deceptive Telemarketing Acts or Practices, 16 C.F.R. § 310.3 against Defendants DVC, Cancun Ink Corp., Vallarta Gardens, Tafer Resorts, Vacancy Rewards, and John Does (Count VIII), *id.* at ¶¶ 191-95;

(9) Violating the Prohibition against Abusive Telemarketing Acts or Practices, Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108, and Telemarketing Sales Rule, 16 C.F.R. § 310, Abusive Telemarketing Acts or Practices, 16 C.F.R. § 310.4 against Defendants DVC, Cancun Ink Corp., Vallarta Gardens, Tafer Resorts, Vacancy Rewards, and John Does (Count IX), *id.* at ¶¶ 196-201;

(10) Assisting and Facilitating Abusive and Deceptive Acts or Practices, 16 C.F.R. § 310.3(b), against **ResortCom**, Whisl, Prestige, Ascendant, Rapid Eagle, Vacancy Rewards, and John Does (Count X), *id.* at ¶¶ 202-15;

(11) Virginia Unfair Competition against **all Defendants** (Count XI), *id.* at ¶¶ 216-223;

(12) Virginia False Advertising against Defendants DVC, Cancun Ink Corp., Parrot Caribbean, Vallarta Gardens, and John Does (Count XII), *id.* at ¶¶ 224-29;

(13) Virginia Common Law Tortious Interference against **all Defendants** (Count XIII), *id.* at 230-38;

(14) Virginia Common Law Conspiracy against **Defendant Group 1** and John Does (Count XIV), *id.* at 239-44; and

(15) Virginia Common Law Conspiracy Claim against Defendant Group 2 and John Does (Count XV), *id.* at 245-250.

to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted).

Rule 8(a)(2) requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . [and that] give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (internal quotations and citation omitted). *Twombly* established that the "plain statement" must "possess enough heft"—that is, "factual matter"—to set forth grounds for the plaintiff's entitlement to relief "that is plausible on its face." 550 U.S. at 557, 570. The complaint must contain sufficient factual allegations that, taken as true, "raise a right to relief above the speculative level" and "across the line from conceivable to plausible." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal citations and quotations omitted). "A pleading that offers labels and conclusions[,] a formulaic recitation of the elements of a cause of action . . . [or] naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (internal citation and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, to survive a Rule 12(b)(6) motion to dismiss, the complaint must present sufficient non-conclusory factual allegations to support reasonable inferences of the plaintiff's entitlement to relief and the defendant's liability for the alleged unlawful act. *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (citations omitted).

### B. Rule 8(a)

"A complaint which fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief constitutes a shotgun pleading."

7

*Jackson v. Warning*, No. CV PJM 15-1233, 2016 WL 7228866, at *4 (D. Md. Dec. 13, 2016) (internal citation and quotation omitted); *see also SD3, LLC v. Black & Decker (U.S.) Inc.,* 801 F.3d 412, 422 (4th Cir. 2015) (An antitrust plaintiff "cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group . . . . Thus, the complaint must forecast that factual showing, and if it fails to allege particular facts against a particular defendant, then the defendant must be dismissed."). In addition to violating Rule 8, "shotgun" or group pleading fails to provide notice to the opposing party as to the extent of liability and on what basis such liability exists, as well as hampers the ability to have claims efficiently litigated, thereby wasting judicial resources. *Anderson*, 508 F.3d at 188.

### C. Rule 9(b)

Claims that sound in fraud are subject to the heightened pleading requirement set forth in Rule 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To survive a 12(b)(6) motion, Plaintiff's fraud claim must therefore plead with particularity "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Fessler v. Int'l Bus. Machines Corp.*, 959 F.3d 146, 153 (4th Cir. 2020) (internal citation and quotations omitted).

## III. ANALYSIS[12]

### A. Contributory Infringement under the Lanham Act (Count III)

Contributory infringement is a judicially-created doctrine, based on the law of torts, that assigns liability if a defendant facilitates or encourages trademark infringement. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163 (4th Cir. 2012). As the case law establishes, "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 853 (1982). Subsequent case law has interpreted this to mean

> a manufacturer or distributor could be held liable to the owner of a trademark if it intentionally induced a merchant down the chain of distribution to pass off its product as that of the trademark owner's or if it continued to supply a product which could readily be passed off to a particular merchant whom it knew was mislabeling the product with the trademark owner's mark.

*Georgia Pac. Consumer Prod., LP v. Von Drehle Corp.*, 618 F.3d 441, 451 (4th Cir. 2010) (quoting *Sony Corp. of Am. V. Universal City Studios, Inc.*, 464 U.S. 417, 439 n. 19). Even where a manufacturer does not exercise direct control over others in the distribution chain, it can be held liable for trademark infringement where it "intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood*, 456 U.S. at 853-54; *see*

---

[12] As a preliminary observation, Plaintiff's FAC is structured around allegations against the Defendants as a group, without specifying the conduct attributable to each Defendant. *See e.g.*, FAC at ¶¶ 8, 22-23, 62-70. Such pleading constitutes "shotgun pleading" and fails to give each Defendant notice as to the extent and scope of its liability. Nevertheless, courts have been hesitant to dismiss complaints as a whole under Rule 8 where there is an allegation of group liability under each claim. *See, e.g.*, *Mao v. Glob. Tr. Mgmt., LLC*, No. 4:21CV65 (RCY), 2022 WL 989012, at *3 (E.D. Va. Mar. 31, 2022) ("Because Plaintiffs articulate a theory of group liability under each claim, the pleading is not a 'group pleading' or 'shotgun pleading.'"); *Robinson v. Moynihan*, No. 3:21CV122, 2021 WL 2346107, at *3 (E.D. Va. June 8, 2021) ("The Court could dismiss Robinson's complaint for this reason alone"—as in dismissing the shotgun pleading for violating Rule 8(a)—but "[n]onetheless, the Court analyzes each count below.") (citation omitted). Notwithstanding its issues under Rule 8(a), the Court will analyze the sufficiency of the FAC under Rule 12(b)(6), which itself considers the extent to which there are alleged facts specific to ResortCom.

*also Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) (same).

But the Supreme Court has cautioned

> [i]t is not enough to have general knowledge that some percentage of the purchasers of a product or service is using it to engage in infringing activities; rather, the defendant must supply its product or service to "identified individuals" that it knows or has reason to know are engaging in trademark infringement.

*Rosetta Stone Ltd.*, 676 F.3d at 163 (citing *Sony*, 464 U.S. at 439 n.19).   A plaintiff must also establish underlying direct infringement to bring a claim for contributory trademark infringement. *Id.* at 163.

Plaintiff claims ResortCom had "actual and/or constructive knowledge of trademark violations committed by telemarketers Defendants Cancun Ink Corp. and Parrot Caribbean" and yet "continued and/or continue to use [these] telemarketers . . . to sell their products and services." FAC at ¶ 151; *see generally id.* at ¶¶ 149-154.   But Marriott has failed to allege facts that make plausible that ResortCom processed payments with knowledge that those payments were obtained through solicitations involving infringement of Marriott's trademark.   In that regard, Marriott contends its claim that ResortCom possessed the required knowledge of trademark infringement is adequately supported by its allegation that ██████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████ that purportedly establishes that ResortCom contributorily infringed Marriott's mark.[13]

---

[13] ████████████████████████████████████████████████████████████ FAC at ¶ 95.  And ResortCom allegedly was in daily contact with Tafer Resorts, who owned the resorts for which victims were sold vacation packages. *Id.* at ¶¶ 78, 102-05.  ██████ ████████████████████████████ *Id.* at ¶ 92.  In its opposition, Marriott argues for the first time those agreements caused ResortCom to provide "new sales processing" for Vallarta Gardens and "contract processing" for Tafer in addition to "welcome calls" and "special marketing" programs with "multiple merchant accounts, as needed" for Vallarta Gardens and Tafer. Opp. at 7.

FAC ¶¶ 75-78, 93-96.  None of these allegations, taken alone or together, make plausible that ResortCom had actual or constructive notice of trademark infringement.  Critically, Plaintiff fails to allege how ResortCom knew or avoided knowing about the trademark infringement perpetrated against Marriott as part of this scam. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* FAC ¶ 23, 95 (2018), and contrary to Marriott's assertions, *see* Opp. at 26-27, daily contact between Tafer and ResortCom and shared board members do not allow a reasonable inference of  ResortCom's knowledge of trademark infringement against Marriott.  Likewise, Marriott's allegations of chargebacks do not allow a reasonable inference that ResortCom knew or avoided knowing about trademark infringement.[14] Nor do the allegations concerning ▮▮▮▮ allow for such an inference.  It is not clear ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from which actual or constructive knowledge of trademark infringement can be ascertained.  In any event, the facts alleged are not sufficient, as Marriott contends, to "infer a contractual relationship between ResortCom and the telemarketers" because "payment processors, like ResortCom, process payments from deceived consumers to telemarketers."  Opp. at 8.  Similarly, the Court rejects Marriott's claim that allegations of a relationship between ResortCom and Tafer allows the Court to "properly infer that ResortCom exercised some control over Cancun Ink Corp."  Opp. at 8.  For these reasons, the Court **GRANTS** Defendant's motion to dismiss Count III.

---

[14] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**B. Unfair Competition under the Lanham Act (Count VI)**

The elements for unfair competition are identical to trademark infringement under the Lanham Act. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 (4th Cir. 1995); *see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 300 (4th Cir. 2012). To prove unfair competition, "a complainant must demonstrate that it has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon, Inc.*, 43 F.3d at 930; *see also Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). Courts have viewed this as requiring a plaintiff to show five elements: "(1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred in commerce; (4) that the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers." *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (internal citation and quotations omitted) (applying this test to both trademark infringement and unfair competition); *see also Rosetta Stone Ltd.*, 676 F.3d at 152 (applying this test to trademark infringement).

While Marriott has shown that they have a valid, protectible trademark, *see generally* FAC at ¶¶ 27-45, Marriott has not alleged with any specificity that *ResortCom* used a colorable imitation of the trademark. Instead, in a general and conclusory manner Marriott alleges against Defendants collectively that they confused and deceived existing and prospective consumers into believing there was a legitimate connection between the products and services provided by Defendants and those provided by Marriott. FAC at ¶¶ 174-76. But there are no allegations in this respect specific to ResortCom, which is not otherwise implicated in the FAC for *use* of Marriott's trademarks.

12

Marriott contends that an inference can be drawn that ResortCom is aware of and played "an integral part" in the robocall scam from the variety of services Resort Com offers to Marriott's "members and their guests."  Opp. at 13-14.  But even if the Court accepted these conclusory allegations as sufficiently alleged facts, they do not allow a reasonable inference that ResortCom *used* the mark in a manner required to sustain an unfair competition claim.  Similarly, Marriott's conclusory allegation that because ResortCom "exercise[d] a level of control over and monitor[ed] Defendant Group 1 entities" it can be held jointly liable, Opp. at 12, is not accompanied by any factual allegations that make that claim plausible.  The Court therefore **GRANTS** Defendant's Motion with respect to Count VI.

### C. Assisting and Facilitating Abusive and Deceptive Acts in Violation of the TSR (Count X)

The Telemarketing and Consumer Fraud and Abuse Prevention Act mandates the FTC "prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices."  15 U.S.C. § 6102(a)(1).  The FTC has promulgated the Telemarketing Sales Rule ("TSR"), which states "[i]t is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule."  16 C.F.R. § 310.3(b).  Both parties appear to agree that the FAC has sufficiently alleged a violation of the TSR, but part ways on whether the FAC sufficiently states a claim for such a violation against ResortCom.

While "substantial assistance" has not been defined by the Fourth Circuit, other courts have interpreted this to mean "more than mere causal or incidental assistance to the telemarketer." *CFPB v. Daniel A. Rosen, Inc.*, No. 2:21-cv-07492-VAP-(JDEx), 2022 WL 1514439, at *4 (C.D.

Cal. Apr. 5, 2022) (internal citation and quotations omitted).   And the connection between the substantial assistance and deceptive telemarketer and resulting violations of core provisions of the TSR need not be directly connected to the consumer deception.  *Id.*; *see also FTC v. Chapman*, 714 F.3d 1211, 1216 (10th Cir. 2013); *FTC v. Nudge, LLC*, No. 2:19-cv-00867-DBB-DAO, 2021 WL 3145700, at *4 (D. Utah July 26, 2021).[15]  Moreover, some courts have found "the threshold for what constitutes substantial assistance is low."  *Daniel A. Rosen, Inc.*, 2022 WL 1514439, at *4 (cleaned up) (internal citation and quotations omitted).  One example of qualifying minimal conduct can be found in *FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1237 (11th Cir. 2017), where the court held a payment processor liable under 310.3(b) because it ignored "several glaring red flags" with regard to a merchant including "an unusually high number of chargebacks," finding the processor either "knew or consciously avoided knowing of the fraudulent activities [the merchant] conducted."  In *FTC v. HES Merch. Servs. Co.*, No. 6:12-cv-1618-ORL-22KRS, 2014 WL 6863506, at *7-8 (M.D. Fla. Nov. 18, 2014), *aff'd sub nom. FTC v. HES Merch. Servs. Co., Inc.*, 652 F. App'x 837 (11th Cir. 2016), the court found UPS liable for providing substantial assistance where an employee ignored nine red flags and provided merchant accounts to the directly-offending party.   In that case, however, UPS did not dispute its employee "knew or consciously avoided knowing that the [directly-offending] defendants were violating the TSR."  *Id.* at *8.  The TSR also lists other examples of conduct, that when coupled with knowledge or conscious avoidance of knowledge, violates 310.3(b), including:

> [p]roviding lists of contacts to a seller or telemarketer that identify persons over the age of 55, persons who have bad credit histories, or persons who have been

---

[15] In *FTC v. Chapman*, the court explained that while the FTC originally considered requiring a "direct connection" between the substantial assistance and unlawful conduct, it ultimately rejected this requirement in the final rule, requiring substantial assistance need only be "causal or incidental."   While "cleaning a telemarketer's office [or] delivering lunches to the telemarketer's premises" would not qualify, the court found the defendant's conduct of developing the workshop marketed in the scheme, helping develop the questionnaire used in the scheme, and other such assistance was sufficient.  714 F.3d at 1214, 1216-17 (internal citations and quotations omitted).

> victimized previously by deceptive telemarketing or direct sales; providing any
> certificate or coupon which may later be exchanged for travel related services;
> providing any script, advertising, brochure, promotional material, or direct
> marketing piece used in telemarketing; or providing an appraisal or valuation of a
> good or service sold through telemarketing when such an appraisal or valuation has
> no reasonable basis in fact or cannot be substantiated at the time it is rendered.

Telemarketing Sales Rule, 60 Fed. Reg. 43,842 (Aug. 23, 1995). *See also FTC v. Chapman*, 714

F.3d 1211, 1217 (10th Cir. 2013).

As in *WV Universal Mgmt., LLC*, Marriott has adequately alleged that ResortCom ignored

red flags with respect to at least Vallarta Gardens, based on ███████████████████████

███████████████████. FAC at ¶¶ 93-96. Given the low threshold for substantial assistance,

the FAC has alleged sufficient to make plausible its claim in Count X against ResortCom. The

Court therefore **DENIES** ResortCom's motion to dismiss with respect to Count X.

### D. Virginia Unfair Competition (Count XI)

The Virginia Consumer Protection Act ("VCPA") outlaws "fraudulent acts or practices

committed by a supplier in connection with a consumer transaction." Va. Code § 59.1-200(A).

This claim is subject to the heightened pleading standard under Fed. R. Civ. P. 9(b). *Wynn's

Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015). To satisfy Rule 9(b), a

plaintiff must plead "the time, place, and contents of the false representations, as well as the

identity of the person making the misrepresentation and what he obtained thereby." *Harrison v.

Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quotations and citations

omitted).

Marriott alleges that "Defendants are misrepresenting to consumers that Defendants' goods

are similar to those of Marriott in terms of standards, quality, grade, style, or model in violation of

VA. CODE ANN. § 59.1-200(A)(6)." FAC at ¶ 220. Absent from the FAC are any factual

allegations that make plausible that ResortCom misrepresented or was aware of the content of the

15

robocalls. *See id.* at ¶¶ 216-21. "Fraud allegations based merely on 'bare contentions' or 'bald assertions' with no specifics of the 'substance of the misrepresentations' fail to satisfy Rule 9(b)." *Gurwel v. Sea World Parks & Entm't*, No. 2:20-cv-312, 2021 WL 4168503, at *5 (quoting *Baker v. Elam*, 883 F. Supp. 2d 576, 580 (E.D. Va. 2012)). Put another way, the FAC fails to allege any of the "who, what, when, where, and how of the alleged fraud," as required under Rule 9(b). *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal citations and quotations omitted). For these reasons, the Court **GRANTS** ResortCom's motion to dismiss with respect to Count XI.[16]

### E. Tortious Interference (Count XIII)

To prove common law tortious interference in Virginia, a plaintiff must allege: "(1) there was a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) the defendant had knowledge of that relationship or expectancy; (3) there is a reasonable certainty that absent the defendant's intentional misconduct, the plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to the plaintiff." *Buffalo Wings Factory, Inc. v. Mohd*, 622 F. Supp. 2d 325, 336 (E.D. Va. 2007) (citing *Com. Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 300, 484 S.E.2d 892, 896 (1997)). Where a plaintiff alleges an at-will contract, the plaintiff must additionally prove that the defendant employed "improper methods" including illegal or independently tortious conduct. *Id.* (citing *Perk v. Vector Res. Grp.*, 253 Va. 310, 314-15, 485 S.E.2d 140, 143 (1997)). In an analogous case, *Buffalo Wings Factory*, the court found "loyal and repeat customer[s]" amounted to a business expectancy. 622 F. Supp. 2d at 337. Here, Marriott asserts the scam lured Marriott customers away from Marriott

---

[16] ResortCom also argues that Marriott lacks standing because it is not a consumer. Def.'s Mem. Supp. Mot. Dismiss 25-26 [Doc. No. 57]. Because the Court dismisses this claim on other grounds, the Court does not decide this issue of standing.

by pretending to offer Marriott products, *id.* at 231-34. However, Marriott fails to allege facts sufficient to reasonably infer that ResortCom specifically knew about Marriott's business relationship or expectancy with customers and that ResortCom's activities somehow caused injury to that relationship. Rather, Marriott has pled nothing beyond generic pleadings about "Defendants," FAC at ¶¶ 230-38. For these reasons, the Court **GRANTS** Defendant's motion to dismiss with respect to Count XIII.

### F. Common Law Conspiracy (Count XIV)

The elements of common law conspiracy in Virginia are: (1) a combination "of two or more persons [] to accomplish"; (2) "by some concerted action"; (3) "some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means"; (4) which causes damage to the plaintiff. *Com. Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 48, 453 S.E.2d 261, 267 (Va. 1995); *see also Borg v. Warren*, 545 F. Supp. 3d 291, 321 (E.D. Va. 2021). "The foundation of a civil action of conspiracy is the damage caused by the acts committed in furtherance of the conspiracy." *Gelber v. Glock*, 293 Va. 497, 533, 800 S.E.2d 800, 820 (2017) (internal citation and quotations omitted). To survive a motion to dismiss, a plaintiff must establish "the requisite concert of action and unity of purpose in more than mere conclusory language." *Bay Tobacco, LLC v. Bell Quality Tobacco Prod.*, LLC, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (citation and quotations omitted). In other words, "Virginia [law] requires a plaintiff to allege some details of time and place and the alleged effect of the conspiracy." *Borg*, 545 F. Supp. 3d at 321 (citation and quotations omitted).

Plaintiff fails to allege the "concert of action" for ResortCom in more than conclusory language. Again, Marriott points to chargebacks, the overlap of board members between ResortCom and Tafer as well as Tafer's connection to other Defendants in Defendant Group 1.

17

Opp. at 7-8, 26-27. But these allegations and allegations about ResortCom processing payments for other Defendants is insufficient to reasonably infer ResortCom participation in a common law conspiracy.

### IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** Defendant ResortCom International LLC's Motion to Dismiss for Failure to State a Claim [Doc. No. 56] is **DENIED** in part and **GRANTED** in part; it is denied as to Count X and granted with respect to all other counts against Defendant ResortCom International LLC.

The Clerk shall forward a copy of this Order to all counsel of record.

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
September 21, 2022

18