**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

MARRIOTT INTERNATIONAL, INC.,

      Plaintiff,

v.

DYNASTY MARKETING GROUP LLC,
*et al.*,

      Defendant.

Civil Action No.  1:21-cv-00610-AJT/JFA

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT DYNASTY
MARKETING GROUP LLC**</u>

Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (for *pro hac vice*)
Kevin G. Rupy (for *pro hac vice*)
Duane C. Pozza (for *pro hac vice*)
Stacey J. LaRiviere (VA Bar No. 92354)
WILEY REIN LLP
2050 M St. NW
Washington, DC 20036
(202) 719-7000 (phone)
(202) 719-7049 (fax)
abarnes@wiley.law
dweslow@wiley.law
krupy@wiley.law
dpozza@wiley.law
slariviere@wiley.law

*Counsel for Plaintiff
Marriott International, Inc.*

## <u>TABLE OF CONTENTS</u>

I.     Preliminary Statement ................................................................................................... 1

II.    Statement of Undisputed Material Facts ....................................................................... 2

   A.   Plaintiff Marriott and Its Intellectual Property Rights. ............................................ 2

   B.   Defendant Dynasty and Its Unlawful Use of the MARRIOTT Mark. ........................ 2

III.   Summary Judgment Standard ........................................................................................ 7

IV.    Argument ........................................................................................................................ 7

   A.   Liability ...................................................................................................................... 7

      1.   Dynasty Violated the Lanham Act When Utilizing the MARRIOTT Mark in
      Advertising ............................................................................................................... 7

         a.   Infringement Claim .......................................................................................... 8

         b.   Trademark Counterfeiting ................................................................................ 9

   B.   Relief ........................................................................................................................ 11

      1.   Marriott is Entitled to an Award of Maximum Statutory Damages. ..................... 11

      2.   Marriott is Entitled to Injunctive Relief Against Defendant Dynasty. ................. 14

V.     Conclusion .................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................7, 8

*Automobili Lamborghini S.p.A. v. Garcia*,
   467 F. Supp. 3d 385 (E.D. Va. 2020) ...................................................................12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................7

*Coach, Inc. v. Bags & Accessories*,
   No. 10-2555, 2011 WL 1882403 (D.N.J. May 17, 2011) ......................................11

*Diane Von Furstenberg Studio v. Snyder*,
   No. 1:06-cv-1356, 2007 WL 2688184 (E.D. Va. Sept. 10, 2007) ...........................8

*Fox News Network, LLC v. Doe*,
   No. 1:20-cv-00200, 2021 WL 5107731 (E.D. Va. Jan. 27, 2021) ................9, 10, 12

*Fox News Network, LLC v. xofnews.com*,
   No. 1:20-cv-149, 2021 WL 5045065 (E.D. Va. Apr. 22, 2021) .............................12

*Glob. Tel\*Link Corp. v. Jail Call Servs., LLC*,
   No. 1:14-cv-1557, 2015 WL 1936502 (E.D. Va. Apr. 28, 2015) ....................11, 12

*Hilton Worldwide, Inc. v. Glob. Advert., Inc.*,
   No. 1:15-cv-1001, 2016 WL 8223436 (E.D. Va. Apr. 8, 2016) .............................15

*JTH Tax, Inc. v. Lee*,
   514 F. Supp. 2d 818 (E.D. Va. 2007) ...................................................................16

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
   43 F.3d 922 (4th Cir. 1995) ...................................................................................14

*Microsoft Corp. v. Does 1-2*,
   No. 1:16-cv-993, 2017 WL 5163363 (E.D. Va. Aug. 1, 2017) .............................14

*Nationstar Mortgage, LLC v. Ahmad*,
   155 F. Supp. 3d 585 (E.D. Va. 2015) .....................................................................8

*Ohio State Univ. v. Skreened Ltd.*,
   16 F. Supp. 3d 905 (S.D. Ohio 2014) ...................................................................10

*Phelps & Assocs., LLC v. Galloway*,
   492 F.3d 532 (4th Cir. 2007) .................................................................................14

ii

*Rolex Watch U.S.A., Inc. v. Watch Empire LLC*,
   No. CV 13-09221 (FFMx), 2015 WL 9690322 (C.D. Cal. Sept. 29, 2015) ..........................11

*SecuraComm Consulting Inc. v. Securacom Inc.*,
   166 F.3d 182 (3d Cir. 1999)......................................................................................11

*Select Auto Imports Inc. v. Yates Select Auto Sales, LLC*,
   195 F. Supp. 3d 818 (E.D. Va. 2016) ..........................................................................9

*Teaching Co. P'ship v. Unapix Ent., Inc.*,
   87 F. Supp. 2d 567 (E.D. Va. 2000) ...............................................................12, 13, 14

*Toolchex, Inc. v. Trainor*,
   634 F. Supp. 2d 586 (E.D. Va. 2008) ..........................................................................15

*Volkswagen Grp. of Am., Inc. v. Unincorporated Ass'ns Identified in Schedule A*,
   No. 1:20-cv-1437, 2021 WL 8445261 (E.D. Va. Aug. 23, 2021) ....................................12, 13

*W.E. Bassett Co. v. Revlon, Inc.*,
   435 F.2d 656 (2d Cir. 1970).......................................................................................13

*Zinner v. Olenych*,
   108 F. Supp. 3d 369 (E.D. Va. June 4, 2015) .................................................................2

**Statutes**

15 U.S.C. § 1065.............................................................................................................2, 8

15 U.S.C. § 1114..............................................................................................................9, 10

15 U.S.C. § 1116..................................................................................................................14

15 U.S.C. § 1117.................................................................................................11, 12, 16

26 U.S.C. § 6621..................................................................................................................12

Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104–153, 110
   Stat. 1386 .......................................................................................................................11

**Rules**

Fed. R. Civ. P. 56(a) ...........................................................................................................7

**Other Authorities**

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
   4 § 25:10 (5th ed.).............................................................................................................9

Plaintiff Marriott International, Inc. ("Plaintiff" or "Marriott"), by counsel, submits this Memorandum of Law in Support of its Motion for Summary Judgment against Defendant Dynasty Marketing Group, LLC ("Dynasty" or "Defendant") as to Counts I and II of the First Amended Complaint ("FAC").  For the reasons set forth below, Marriott is entitled to judgment as a matter of law in its favor on its trademark infringement and trademark counterfeiting claims.[1]

## I.   PRELIMINARY STATEMENT

Marriott filed this action to address the unauthorized use of the Marriott mark through robocall campaigns aimed to deceive the consuming public.  Conceding the famousness of the iconic MARRIOTT mark, direct infringer Dynasty testified under oath, verified interrogatory responses, and produced documents conceding its unauthorized use of the MARRIOTT mark in telemarketing, in advertisements on its website, and through multiple social media platforms designed to trick consumers into purchasing vacation packages.  Dynasty admits that it was not authorized to use the MARRIOTT mark and that it intended to capitalize on the mark and its goodwill for its commercial benefit.  Thus, based on these undisputed facts, Marriott is entitled to summary judgment on its trademark infringement and trademark counterfeiting claims.[2]

This Court should grant summary judgment in favor of Marriott on Counts 1 and 2, award the statutory damages of $2 million for Dynasty's willful trademark counterfeiting and trademark infringement, and enter a permanent injunction enjoining Dynasty, its principals, or others acting

---

[1] By Report and Recommendation dated December 6, 2020, Magistrate Judge John F. Anderson recommended default judgment on liability against Dynasty for its discovery abuses and failure to secure new legal counsel. *See* Dkt. No. 195.  As the 14-day deadline for objections extends beyond the deadline for the parties to file summary judgment motions, Marriott files this motion out of an abundance of caution.  Should this Court enter judgment against Dynasty, this memorandum addresses damages for Counts I and II, and Marriott reserves its right to submit any damages proof on any other claims included in any Court order of default judgment.

[2] At this time, Marriott is not seeking summary judgment on claims other than Counts I and II.

on its behalf from engaging in or facilitating such conduct in any way.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   Plaintiff Marriott and Its Intellectual Property Rights.

1.      Marriott registered the "Marriott" mark on September 29, 1970 (No. 0899900).  By its registration, the MARRIOTT mark obtained incontestable status pursuant to 15 U.S.C. § 1065 and serves as conclusive evidence of the validity of the marks, of Marriott's ownership of the marks, and of Marriott's exclusive right to use the marks.[3]

2.      Dynasty was aware of the MARRIOTT mark by 2015 at the latest.  Deposition of Bruno Borra, principal of Dynasty (hereafter "Borra Tr.") at 19: 1-19.  See Ex. 1.

3.      Dynasty conceded that Marriott's mark is famous.  Ex. 1 (Borra Tr. 40: 8-11 and 21-22; 41: 1-11: 98: 16-22; 99: 1).

### B.   Defendant Dynasty and Its Unlawful Use of the MARRIOTT Mark.

4.      Dynasty is a marketing agency that operates an inbound and outbound call center, and also refers to itself as Dynasty Vacation Club.  Ex. 1 (Borra Tr. 23: 17-20; 48: 14-21; 49: 6-15 and 20-22; 50: 1-5 and 12-18); Ex. 2.

5.      Dynasty utilized lead generation to find customers by purchasing consumer lists from Facebook via data brokers.  Dynasty acquired about 1 million names and phone numbers.  Ex. 1 (Borra Tr. 25: 13-22; 26:1 and 4-11 and 16-22; 27:1-13).

6.      From 2020 to present, Dynasty's calls used an automated dialer to call individuals on those customer lists.  Ex. 1 (Borra Tr. 27:1-4; 28: 20-22; 29: 1-4 and 10-12 and 16-21; 30:2-9; 32: 1-7).

---

[3]  This Court may take judicial notice of trademark registrations.  *See, e.g.*, *Zinner v. Olenych*, 108 F. Supp. 3d 369, 377 n.2 (E.D. Va. June 4, 2015).

7.      To increase the likelihood that consumers would answer a Dynasty call, the automated dialer reflected a phone number that matched the area code where the individual being called was located.  Ex. 1 (Borra Tr. 83: 20-22: 84: 1-19).

8.      Once the automated dialer connected to a live consumer, a Dynasty employee began telemarketing vacation packages.  Ex. 1 (Borra Tr. 35: 16-22; 36:1-4).

9.      If the call placed by the automated dialer went unanswered, Dynasty left a prerecorded message advertising vacation packages.  Ex. 1 (Borra Tr. 36:1-22).

10.     Dynasty admits that it used the prerecorded messages at issue from January to July 2021.  Ex. 1 (Borra Tr. 36: 8-14).

11.     Dynasty's principal, Bruno Borra, authored the prerecorded language.  Ex. 1 (Borra Tr. 39: 10-15).

12.     Dynasty then contracted a company called Fiver to record the audio message.  Ex. 1 (Borra Tr. 62: 4-6).

13.     Dynasty uploaded the prerecorded message to the automated dialer.  Ex. 1 (Borra Tr. 63: 19-22; 64: 1-9 and 12-19; 68: 18-21).

14.     There were at least two variations of the prerecorded call, one with a Fourth of July theme and one with a winter or Easter theme.  Ex. 1 (Borra Tr. 69: 3-12; 113: 17-22).

15.     Both prerecorded messages used the MARRIOTT mark twice.   Mr. Borra confirmed that the two call scripts excerpted in allegation 110 of Marriott's FAC were the same prerecorded messages Dynasty used by autodialer.   Those prerecorded calls used the following scripts:

> Fourth of July Campaign: Hi, my name is Jennifer Kelly. You are receiving this call because you and your family are **previous guests** with the Hilton and **Marriott**. You are eligible to receive our members only free upgrade for our fourth of July day special from Hilton Grand vacation club. Travel to our all[-]inclusive award-

winning resorts in Cabo, Cancún, Tulum, Puerto Vallarta, and the Dominican Republic[,] Punta Cana, Panama, Costa Rica, and many other locations such as Dubai, Italy, Spain, Peru, Asia and over a hundred locations throughout the United States such as Orlando and Las Vegas[,] just to name a few. Call the number on your caller ID now for this amazing deal. We have four vacations, four years for only 488. Plus, if you call the number on your caller ID now, receive a free four day and three[-]night trip in the U.S. Call now to receive your Hilton and **Marriott honors** free upgrade.

Black Friday Campaign: Hi this is Tiffany. You're getting this message because **you traveled in our network with** Hilton & **Marriott** within the last 24 months and we are doing an extended Black Friday holiday special sale with this promotion. You can travel to Orlando[,] Disney World[,] Las Vegas[,] beautiful Dubai[,] and all-inclusive five-star resort from the Caribbean Islands.

Ex. 1 (Borra Tr.: 39: 18-21; 69: 13-18; 98: 2-5; 111: 16-22; 112: 1-6 (confirming that he heard two Marriott references "in the beginning and the end") and 22; 113: 1-8 and 17-22; 114: 1-7; 116: 6-10 and 14-22; 117: 1-10).

16.      Dynasty admits that more than 100,000 Fourth of July calls were placed and that this prerecorded call remained in the autodialer through at least August of 2021.  Ex. 1 (Borra Tr.: 70: 9-14; 72:10-17).

17.      Dynasty provided the same Fourth of July call to another automated dialer, Rapid Eagle Inc. d/b/a VoIP Essential.  Ex. 1 (Borra Tr. 73: 1-6; 97: 14-22); Ex. 3 and 4; Resp. to Rog No. 4.

18.      Dynasty was aware of tracebacks[4] conducted by the ITG in June and July of 2021 reflecting that prerecorded Dynasty calls, namely the Fourth of July calls,[5] unlawfully included a

---

[4]  "Traceback" refers to the process of following the path of a robocall back to the point of origination using notices to upstream providers and to call originators by the Industry Traceback Group ("ITG"), the FCC's registered Traceback Consortium.  *See* Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105; *see also*, 47 CFR § 64.1203.

[5]  Marriott has attached sworn deposition testimony from Dynasty admitting the content of the recorded calls as alleged in the Complaint.  However, to the extent requested by the Court, Marriott

MARRIOTT reference.  Yet Dynasty did nothing to stop those calls from being placed.  Ex. 1 (Borra Tr. 102: 16-22; 103: 1-19; 108: 17-22; 109: 1-7; 112: 22; 113: 1-8).

19.     Dynasty did not seek approval before using the MARRIOTT mark in telemarketing. Ex. 1 (Borra Tr. 99: 5-13).

20.     Dynasty conceded that it was not authorized to use the MARRIOTT mark in any way.  Ex. 1 (Borra Tr. 40: 4-7).

21.     When uploading the Fourth of July prerecorded message, Dynasty understood it was not permitted to use brand names in telemarketing.  Ex. 1 (Borra Tr. 98: 6-10; 106: 8-16).

22.     With respect to the Easter themed prerecorded message, that message remained in the automated dialer through at least late May of 2021.  Ex. 1 (Borra Tr. 114: 1-19; 117:2-13).

23.     And in February and March of 2021, Dynasty admitted to using the MARRIOTT mark in advertisements on social media, specifically using "#Marriott" on Facebook and Instagram.  Ex. 1 (Borra Tr.: 122:1-6 and 17-22; 123: 1-20; 124: 14-22; 125: 1-2 and 19-22; 126: 1-13); Ex. 5 and 6 (#Marriott used on Instagram, reflected below); Ex. 7 (#Marriott used on Facebook, reflected below).



---

can also provide to the Court the audio recordings of the prerecorded calls (which cannot be filed through ECF).





**24.** Dynasty did not obtain permission to use the MARRIOTT mark as "#Marriott" on social media posts. Ex. 1 (Borra Tr. 128: 15-21).

**25.** Dynasty used the MARRIOTT mark to convince consumers to stay at resorts, including other Defendants' resorts (advertising at least three Vallarta Gardens' resorts and four or five Tafer Resorts), that were not affiliated with Marriott. Ex. 1 (Borra Tr. 41: 8-11 and 15-20; 183: 1-5 and 19-22; 184: 1-3; 188: 1-13); Ex. 8 and 9 (containing letter agreement with Tafer); Ex. 10 and 11 (advertising Vallarta Gardens on its website).

**26.** Dynasty entered contractual relationships with Defendants Vallarta Gardens and Tafer Resorts. Ex. 1 (Borra Tr. 43: 10-16); Ex. 8 and 9.

**27.** Dynasty used the MARRIOTT mark because "everybody knows" Marriott, because "80 percent of the United States has stayed at a Hilton or Marriott," and to build interest in the vacation packages Dynasty marketed. Ex. 1 (Borra Tr. 40: 8-11 and 21-22; 41: 1-11; 98: 16-22; 99: 1).

28.     In addition to using the mark in telemarketing and on social media, Dynasty used the MARRIOTT mark to advertise multiple Marriott properties on its website. Ex. 1 (Borra Tr. 52: 12-14; 53: 1-7).

29.     Dynasty's marketing efforts generated over 1,000 bookings.  Ex. 1 (Borra Tr. 160: 7-11).

30.     Because Dynasty refused to confirm that it no longer uses the "#Marriott" on Instagram or Facebook, see Ex. 1 (Borra Tr.: 127: 8-19), Marriott is at risk of continuous violation of its trademark rights and damage to the goodwill built over nearly 100 years. *See* FAC ¶¶ 27 and 130.

## III.   SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A fact is material for purposes of summary judgment if, when applied to substantive law, it affects the outcome of the litigation.  *Anderson*, 477 U.S. at 248.  When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."  *Id*. at 250 (quoting prior version of Fed. R. Civ. P. 56(e)). The mere existence of some evidence to support the non-moving party is not sufficient; there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249.

## IV.   ARGUMENT

### A.   Liability

#### 1.   Dynasty Violated the Lanham Act When Utilizing the MARRIOTT Mark in Advertising.

a.   Infringement Claim

To establish trademark infringement under the Lanham Act, Marriott need only demonstrate: (1) that it owns a valid mark, (2) that Dynasty is using a similar mark in commerce and without Marriott's permission, (3) that it is for the "sale, offering for sale, distribution, or advertising" of goods or services, and (4) that Dynasty's use of the mark is likely to confuse consumers. *Nationstar Mortgage, LLC v. Ahmad*, 155 F. Supp. 3d 585, 589 (E.D. Va. 2015) (citing 15 U.S.C. § 1114(1)(a)).   Factors the Court considers in determining likelihood of confusion include:

> a) the strength or distinctiveness of the mark; b) the similarity of the two marks; c) the similarity of the parties' goods or services; d) the similarity of the facilities the two parties use in their business; e) the similarity of the advertising used by the parties; f) the defendant's intent; g) actual confusion; h) the quality of the defendant's product; and i) the sophistication of the consuming public.

*Id*. at 590 (citing *Swatch AG. v. Beehive Wholesale, LLC*, 739 F.3d 150, 158-59 (4th Cir. 2014)). And "[a]lthough the likelihood of confusion is a fairly fact-specific inquiry, 'summary judgment is appropriate when the material, undisputed facts disclose a likelihood of confusion.'"   *Id*. (quoting *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 422 (4th Cir. 1998)).

It is undisputed that Dynasty's conduct satisfies all elements.   This Court has already determined that Marriott "has shown that [it has] a valid, protectible trademark."   *See* Dkt. No. 109 at 12.   Plaintiff's rights in the MARRIOTT mark are incontestable—Plaintiff owns the federally-registered MARRIOTT mark, which constitutes *prima facie* evidence of Marriott's ownership of the mark and exclusive right to use the mark in commerce.   *See* 15 U.S.C. § 1065.   MARRIOTT "is [also] a strong mark of the identity of the source . . . [which] has been widely used by the plaintiff."   *Diane Von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356, 2007 WL 2688184, at *3 (E.D. Va. Sept. 10, 2007) (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)).

To maximize its commercial benefit, Dynasty used an identical copy of the MARRIOTT mark to hawk vacation packages in prerecorded calls, on social media posts advertising vacation packages (specific platforms include Facebook and Instagram), and on its website, all without authorization. Ex. 1 (Borra Tr.: 122:1-6 and 17-22; 123: 1-20; 124: 14-22; 125: 1-2 and 15-19; 126: 1-13); Ex. 5 and 6 (#Marriott used on Instagram); Ex. 7 (#Marriott used on Facebook); *Nationstar Mortgage, LLC*, 155 F. Supp. 3d at 591 (noting that use of identical mark is likely to confuse consumers).

And because Dynasty had prior knowledge of Marriott's marks, the Court may infer that Dynasty possessed an intent to infringe. *See, e.g.*, *Select Auto Imports Inc. v. Yates Select Auto Sales, LLC*, 195 F. Supp. 3d 818, 837–38 (E.D. Va. 2016) (noting that "[c]ourts have repeatedly inferred bad faith in situations where defendants had prior knowledge of plaintiff's marks and where there was other circumstantial evidence of intent"); *Fox News Network, LLC v. Doe*, No. 1:20-cv-00200, 2021 WL 5107731, at *7 (E.D. Va. Jan. 27, 2021). Other circumstantial evidence includes that Dynasty intended to use the mark for its commercial benefit—to achieve higher sales of vacation packages. *See* Ex. 1 (Borra Tr. 40:8-41:3).

Thus, Marriott is entitled to summary judgment on its trademark infringement claim.

b.    Trademark Counterfeiting

It is also undisputed that Dynasty engaged in trademark counterfeiting. Trademark counterfeiting under the Lanham Act involves the producing or selling of a product with a sham trademark that is an intentional and calculated reproduction of a genuine trademark. J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION 4 § 25:10 (5th ed.); 15

U.S.C. § 1114(1)(b).[6]   For this claim, Marriott need only show: (1) that Dynasty intentionally used a counterfeit mark in commerce; (2) that Dynasty knew the mark was counterfeit; (3) that the use occurred in connection with the sale, offering for sale, or distribution of goods; and (4) that the use of the counterfeit mark was likely to confuse consumers.  *See Fox News Network, LLC v. Doe*, 2021 WL 5107731, at *5 (internal citation omitted). Put another way, "to establish liability for trademark counterfeiting, Plaintiff must first prevail on its infringement claim and then also show that Defendants intentionally used Plaintiff's mark knowing it was a counterfeit." *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 911 (S.D. Ohio 2014).

Again, this Court has previously held that Plaintiff's MARRIOTT mark is "a valid, protectible trademark." *See supra* at 9.  Marriott further established its rights in the MARRIOTT mark are incontestable. *See id*.  Considering elements one and two, Dynasty intentionally inserted counterfeit versions of the MARRIOTT mark into its advertisements of vacation packages across multiple platforms:  in pre-recorded messages, Facebook, Instagram, and Dynasty's website. *See* Ex. 1 (Borra Tr.: 52: 12-14; 53: 1-7; 122: 1-6 and 17-22; 123: 1-20; 124: 14-22; 125: 1-2 and 19-22; 126: 1-13); Ex. 5 and 6 (#Marriott used on Instagram); Ex. 7 (#Marriott used on Facebook). Because Dynasty "deliberately replicated" MARRIOTT's mark, Dynasty "knew [it was] counterfeit." *Fox News Network, LLC v. Doe*, 2021 WL 5107731 at *5.  With regard to the third factor, although the Fourth Circuit has not opined on the standard for intentional and calculated use, other courts have indicated that it can be shown through "deliberate[ ] and unnecessar[y] duplicating [of a] plaintiff's mark . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." *SecuraComm Consulting Inc. v. Securacom*

---

[6] "A counterfeit mark is defined as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" *Fox News Network, LLC v. Doe*, 2021 WL 5107731 at *5 (citing 15 U.S.C. § 1127).

*Inc.*, 166 F.3d 182, 187 (3d Cir. 1999) (alterations in original) (quoting *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970)).   Dynasty's principal, Bruno Borra, testified that using a counterfeit version of the MARRIOTT mark was a strategic business decision—by association with a widely known brand, Dynasty hoped to increase its own sales of vacation packages.   *See* Ex. 1 (Borra Tr. 40: 8-41: 3).   Accordingly, the Court may find that Dynasty's counterfeiting was intentional and calculated.   *See Coach, Inc. v. Bags & Accessories*, No. 10-2555, 2011 WL 1882403, at *3 (D.N.J. May 17, 2011); *Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, No. CV 13-09221 (FFMx), 2015 WL 9690322, at *4 (C.D. Cal. Sept. 29, 2015).   And, as explained above, Dynasty's use of the MARRIOTT mark is likely to confuse consumers.   *See supra* at 10.

For these reasons, Marriott is entitled to summary judgment on its trademark counterfeiting claim.

## B.   Relief

### 1.   Marriott is Entitled to an Award of Maximum Statutory Damages.

A trademark owner may elect statutory damages instead of actual damages in a case involving trademark counterfeiting.   Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104–153, § 7, 110 Stat. 1386, 1388, signed into law by the President July 2, 1996.   In a case involving the innocent use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect to receive statutory damages in the amount of not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold. 15 U.S.C. § 1117(c)(1); *Glob. Tel*Link Corp. v. Jail Call Servs., LLC*, No. 1:14-cv-1557, 2015 WL 1936502, at *10 (E.D. Va. Apr. 28, 2015).   Where, as here, the use of the counterfeit mark is willful, the court may award as statutory damages up to $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed. 15 U.S.C § 1117(c)(2); *Glob.*

*Tel\*Link Corp.*, 2015 WL 1936502 at \*10.  "Willful infringement involves an intent to infringe or at least a deliberate disregard for the rights of the mark holder." *Teaching Co. P'ship v. Unapix Ent., Inc.*, 87 F. Supp. 2d 567, 590 (E.D. Va. 2000) (citing *SecuraComm Consulting Inc.*, 166 F.3d at 187).  Courts have not hesitated to award maximum statutory damages against defendants that willfully engage in trademark counterfeiting.  *See Volkswagen Grp. of Am., Inc. v. Unincorporated Ass'ns Identified in Schedule A*, No. 1:20-cv-1437, 2021 WL 8445261, at \*1-2 (E.D. Va. Aug. 23, 2021) (awarding maximum statutory damages for sales of counterfeit software); *Fox News Network, LLC v. xofnews.com*, No. 1:20-cv-149 (AJT/MSN), 2021 WL 5045065, at \*1-2 (E.D. Va. Apr. 22, 2021) (awarding maximum statutory damages for the willful use of a counterfeit mark and image to market products); *Automobili Lamborghini S.p.A. v. Garcia*, 467 F. Supp. 3d 385, 404–05 (E.D. Va. 2020), *appeal dismissed*, 823 F. App'x 174 (4th Cir. 2020), *reh'g denied* (Oct. 27, 2020) (awarding maximum statutory damages of $6,000,000 for willful use of counterfeit marks to sell three different types of goods).  And maximum statutory damages are "frequently award[ed] . . . to 'deter others engaged in selling counterfeit goods, particularly those whose marketplace is the internet.'"  *Fox News Network, LLC v. Doe*, 2021 WL 5107731 at \*6 (quoting *Montblanc-Simplo GMBH v. Miroslav Ilnitskiy*, No. 1:17-cv-415, 2018 WL 1882823, at \*6 (E.D. Va. Jan. 25, 2018)).

The Court may also award prejudgment interest on the amount, calculated at an annual interest rate under 26 U.S.C. § 6621(a)(2) "beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate." 15 U.S.C. § 1117(b).

Here, Marriott seeks a judgment against Dynasty in the amount of $2,000,000 based on Dynasty's counterfeiting of the most famous of Plaintiff's numerous trademarks identified in the

FAC, the MARRIOTT mark, plus interest, and costs.  The maximum statutory amount is warranted because Dynasty has an established history of willful infringement—Dynasty intentionally used the MARRIOTT mark to commercially benefit from it—and to deter others from engaging in counterfeiting through robocalls.  Given the famousness and prominence of the MARRIOTT mark under which Marriott markets its goods and services on a global stage, this Court has previously stated that "prudence required Defendant to conduct a diligent search for trademark issues." *Teaching Co. P'ship*, 87 F. Supp. 2d at 590.  Dynasty had prior knowledge of the MARRIOTT mark and admitted to its famousness. Ex. 1 (Borra Tr. 19: 1-19; 40: 8-11 and 21-22; 41: 1-11: 98: 16-22; 99: 1).  Dynasty's subsequent conduct was in derogation of Marriott's rights. *Id.*

The Second Circuit has helpfully explained willful infringement as involving a "deliberat[e] and unecessar[y] duplicating [of a] plaintiff's mark . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d at 662.  Dynasty admitted to using the MARRIOTT mark in prerecorded calls and on social media accounts (including Facebook and Instagram). *See* Resp. to Interrog. No. 4; Ex. 1 (Borra Tr. 39:7-41:7); Def's. Opp. to Marriott's Third Mot. to Comp. ¶ 10. Dynasty also produced documents reflecting advertisements made on Instagram and Facebook reflecting use of the MARRIOTT mark with a hashtag. Ex. 1 (Borra Tr.: 122: 1-6 and 17-22; 123: 1-20; 124: 14-22; 125: 1-2 and 19-22; 126: 1-13); Ex. 5 and 6 (#Marriott used on Instagram); Ex. 7 (#Marriott used on Facebook).[7] When Dynasty's principal was asked why he used the MARRIOTT mark, he explained that 80% of the U.S. knows Marriott and that association with

---

[7] Alternatively, maximum statutory damages are warranted given Dynasty's failure to fully participate in the discovery process on damages issues, rendering it impossible for Marriott to determine actual damages. *See* 15 U.S.C § 1117(c)(2); *Volkswagen Grp. of Am., Inc. v. Unincorporated Assocs. Identified in Schedule A*, No. 1:20-CV-1437, 2021 WL 8445261, at *1-2 (E.D. Va. Aug. 23, 2021) (awarding Plaintiff the maximum statutory damages of $2,000,000).

Marriott would drum up business.  Ex. 1 (Borra Tr. 40: 8-11 and 21-22; 41: 1-11: 98: 16-22; 99: 1).

For Defendant's willful use of the mark and for deterrence purposes, this Court should impose the maximum statutory damages.

### 2.      Marriott is Entitled to Injunctive Relief Against Defendant Dynasty.

Marriott is entitled to an injunction for Dynasty's violations of the Lanham Act.  The Lanham Act provides that a court may grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office" or to prevent the violation of any common law trademark rights.  *See* 15 U.S.C. § 1116(a); Report and Recommendation at 3, *Microsoft Corp. v. Does 1-2*, No. 1:16-cv-993, 2017 WL 5163363 (E.D. Va. Aug. 1, 2017); *Teaching Co. P'ship,* 87 F. Supp. 2d at 587.

In determining whether a permanent injunction is appropriate, courts consider whether: (1) the plaintiff has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).  Here, a permanent injunction is necessary to reduce the threat of future infringements.

This circuit has found that "irreparable injury regularly follows from trademark infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995).  As evidenced by interrogatory responses, concessions in pleadings, produced documents, and deposition testimony, Dynasty infringed on Marriott's mark.  And as alleged in

the FAC and by Dynasty's refusal to stop its unauthorized use of the MARRIOTT mark, Marriott

is at risk of Dynasty's continued unlawful use of its name mark and consequently is suffering

irreparable harm to the value and goodwill associated with the MARRIOTT mark.  *See* FAC ¶¶

135, 139, 148, 161, 171, and 179; Ex. 1 (Borra Tr.: 127: 8-19).

Furthermore, money damages for Dynasty's conduct are inadequate.  As this Court has

recognized, "[t]he lack of appropriate response from defendant shows a threat of continued

infringement, and also suggests that defendant will not cooperate in any future suits for money

damages." *Hilton Worldwide, Inc. v. Glob. Advert., Inc.*, No. 1:15-cv-1001, 2016 WL 8223436,

at *8 (E.D. Va. Apr. 8, 2016), *report and recommendation adopted sub nom. Hilton Worldwide,

Inc v. Glob. Advert., Inc.*, No. 1:15-cv-01001, 2016 WL 8231154 (E.D. Va. May 19, 2016).

Moreover, because damages for future infringements would require "speculation and guesswork"

(not to mention an extensive global policing effort), money damages are inadequate.  *See Phelps

& Assocs., LLC*, 492 F.3d at 544.  Dynasty refused to confirm that it will no longer use the

MARRIOTT mark in advertising.  Ex. 1 (Borra Tr.: 127: 8-19), which demonstrates a threat of

continued infringement warranting injunctive relief.

Also, the balance of equities strongly favors a permanent injunction, which will prohibit

Defendant from using the MARRIOTT marks without authorization.  Dynasty admits that it had

no authority to use the MARRIOTT mark. Ex. 1 (Borra Tr. 40: 4-7).  "[T]he only hardship suffered

by [Dynasty] if an injunction is entered is an obligation to follow trademark law . . . ." *Hilton

Worldwide, Inc.*, 2016 WL 8223436 at *9.  This factory clearly favors an injunction.

Finally, the public interest is served in avoiding consumer confusion. *Toolchex, Inc. v.

Trainor*, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008) (citing *Bowe Bell & Howell Co. v. Harris*, 145

Fed. App'x 401, 404 (4th Cir. 2005)); *JTH Tax, Inc. v. Lee*, 514 F. Supp. 2d 818, 826 (E.D. Va. 2007).

All four elements are satisfied, and the Court should permanently enjoin Dynasty, as well as its principals and others acting on its behalf, from further use, or facilitation of use, of Marriott's name, brand, and marks.

## V.   CONCLUSION

For the foregoing reasons, Marriott respectfully requests that the Court enter summary judgment against Dynasty on the trademark infringement and counterfeiting claims; award Dynasty statutory damages pursuant to 15 U.S.C. § 1117(c) in an amount equal to $2,000,000; award Marriott interest on the above damage award; permanently enjoin Dynasty, its principals, and others acting on its behalf from infringing on the Marriott name, brand, and marks; and grant such further relief as this Court deems proper.

Dated:  December 16, 2022    MARRIOTT INTERNATIONAL, INC.
              By counsel


              <u>/s/ Attison L. Barnes, III</u>
              Attison L. Barnes, III (VA Bar No. 30458)
              David E. Weslow (for *pro hac vice*)
              Kevin G. Rupy (for *pro hac vice*)
              Duane C. Pozza (for *pro hac vice*)
              Stacey J. LaRiviere (VA Bar No. 92354)
              WILEY REIN LLP
              2050 M St. NW
              Washington, DC 20036
              Tel: (202) 719-7000
              abarnes@wiley.law
              dweslow@wiley.law
              krupy@wiley.law
              dpozza@wiley.law
              slariviere@wiley.law

              *Counsel for Plaintiff*
              *Marriott International, Inc.*

17

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of December 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

Oficinas Parrot Caribbean S.A. de C.V.
MONTECITO 38 PISO 33 OFICINA21
Napoles Benito Juárez 3810

Deep Blue Desarrollos S. de R.L. de C.V.
d/b/a Vallarta Gardens Private Beach Club &
Spa Private Residence Club
Paseo Diaz Ordaz No. 530, Centro, Puerto
Vallarta

Club Caribe Villa Del Palmar S.A. de C.V.
Xcaret, Manzana 2, Lote 5, Local 20,
Supermanzana 35, Benito Juárez, Quintana Roo

Cancun Ink Corp. S.A. de C.V.
ROSAS NO22 MZA. 24 SM. 22, Cancun
Centro 77500 Benito Juarez, Quintana Roo

Bruno Borra, Dynasty Marketing Group LLC
1912 Ham Brown Road
Kissimmee, Florida 34746

/s/ Attison L. Barnes, III
Attison L. Barnes, III (VA Bar No. 30458)
WILEY REIN LLP
2050 M St. NW
Washington, DC 20036
Tel: (202) 719-7000
abarnes@wiley.law

*Counsel for Plaintiff Marriott International, Inc.*

18