IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARRIOTT INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:21cv0610 (AJT/JFA) |
| ) | |
| DYNASTY MARKETING ) | |
| GROUP LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## REPORT AND RECOMMENDATION

This matter is before the court on a motion for summary judgment filed by plaintiff Marriott International, Inc. against defendant Dynasty Marketing Group LLC ("DMG"). (Docket no. 201). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court this report and recommendation, a copy of which will be provided to all interested parties.

### I. BACKGROUND

**A. Procedural History**

On May 18, 2021, plaintiff filed a complaint against John Does 1–10 alleging trademark counterfeiting, trademark infringement, false designation of origin, false advertising, deceptive telemarketing acts or practices, abusive telemarketing acts or practices, unfair competition under Virginia law, and false advertising under Virginia law. (Docket no. 1). On May 17, 2022, plaintiff filed the first amended complaint against several named defendants that included DMG. (Docket no. 22). DMG was deemed served with the first amended complaint by nature of an

agreed order entered by the undersigned on July 22, 2022. (Docket no. 87). DMG, represented by counsel, filed its answer to the first amended complaint on August 4, 2022. (Docket no. 96).

During discovery, plaintiff filed a motion to compel against DMG, and DMG's counsel filed a motion to withdraw as attorney in the case. (Docket nos. 116, 118). Both motions were denied without prejudice. (Docket nos. 125, 126). On October 28, 2022, the undersigned granted a subsequent motion to compel, noting that failure to provide full and complete responses to plaintiff's discovery requests may result in default being entered against DMG on the issue of liability. (Docket no. 142). On November 4, 2022, plaintiff filed a third motion to compel discovery from DMG and for sanctions. (Docket no. 151). DMG's counsel then renewed his motion to withdraw. (Docket no. 166). On November 17, 2022, the undersigned granted the motion to withdraw and delayed issuing a report and recommendation on the motion to compel and for sanctions by fourteen (14) days to allow DMG time to obtain substitute counsel. (Docket nos. 182, 184). No substitute counsel has entered an appearance for DMG.

On December 6, 2022, the undersigned entered a report and recommendation that default be entered against DMG on the issue of liability due to DMG failing to adequately respond to plaintiff's discovery requests, provide a witness for a deposition, and obtain substitute counsel. (Docket no. 195). Plaintiff filed this motion for summary judgment against DMG on December 16, 2022. (Docket no. 201). DMG has not filed an opposition to the motion for summary judgment and the time for doing so has expired. On December 28, 2022, District Judge Trenga adopted the undersigned's report and recommendation, and the clerk entered judgment against DMG as to liability. (Docket nos. 209, 210).

### B. Factual History

Pursuant to Local Civil Rule 56(a) and Federal Rule of Civil Procedure 56(e), the facts set forth in plaintiff's statement of undisputed material facts contained in the memorandum in support of its motion for summary judgment are deemed admitted. (Docket no. 202). Plaintiff registered the "Marriott" mark ("plaintiff's mark") on September 29, 1970. (*Id.* ¶ 1). DMG was aware of plaintiff's mark by 2015 at the latest. (*Id.* ¶ 2).

DMG, which also refers to itself as Dynasty Vacation Club, is a marketing agency that operates an inbound and outbound call center. (*Id.* ¶ 4). DMG purchased consumer lists from data brokers on Facebook that included about one million names and phone numbers. (*Id.* ¶ 5). From 2020 to present, DMG used an automated dialer to call individuals on those customer lists using a phone number that matched the area code where the individual being called was located. (*Id.* ¶¶ 6–7). Once the automated dialer connected to a live customer, a DMG employee would begin telemarketing vacation packages. (*Id.* ¶ 8). If the call was not answered, DMG left a prerecorded message advertising vacation packages. (*Id.* ¶ 9).

DMG's principal, Bruno Borra, authored the language of the prerecorded messages. (*Id.* ¶ 11). DMG then contracted with a company to record the audio messages. (*Id.* ¶ 12). Once DMG received the recordings, DMG would upload those prerecorded messages to the automated dialer. (*Id.* ¶ 13). There were two variations of a prerecorded call that mentioned plaintiff's mark—a Fourth of July themed call and a winter or Easter themed call. (*Id.* ¶¶ 14–15). Plaintiff identified two call scripts in its first amended complaint—a Fourth of July themed call and a Black Friday themed call—that each included plaintiff's mark.[1] (*Id.* ¶ 15). DMG used the

---

[1] In Mr. Borra's deposition, he stated that he did not know why the first amended complaint said it was a Black Friday script. (Docket no. 202-1, Borra Tr. 116: 22; 117: 1–3).

3

prerecorded messages at issue from January to July 2021. (*Id.* ¶ 10). The Easter prerecorded call remained in the automated dialer through at least May 2021. (*Id.* ¶ 22). At least 100,000 Fourth of July calls were placed, and that prerecorded call remained in the automated dialer through August 2021. (*Id.* ¶ 16).

DMG was aware of tracebacks[2] conducted by the Industry Traceback Group ("ITG") in June and July 2021 concerning the Fourth of July calls and did nothing to stop those calls from being placed.[3] (*Id.* ¶ 18). DMG was not authorized to use plaintiff's mark in any way, and it never sought approval to use plaintiff's mark. (*Id.* ¶¶ 19–20). DMG understood it was not permitted to use brand names in telemarketing when it uploaded the Fourth of July prerecorded message. (*Id.* ¶ 21).

DMG used plaintiff's mark in advertisements on social media, including using #Marriott on Facebook and Instagram in February and March of 2021. (*Id.* ¶ 23). DMG did not obtain permission to use plaintiff's mark as #Marriott on social media posts. (*Id.* ¶ 24). DMG also used plaintiff's mark to advertise some of plaintiff's properties on DMG's website without plaintiff's permission. (*Id.* ¶ 28).

DMG used plaintiff's mark to convince consumers to stay at resorts, including other defendants' resorts, that are not affiliated with Marriott. (*Id.* ¶ 25). DMG used plaintiff's mark because "everybody knows" plaintiff, and "80 percent of the United States has stayed at a Hilton or Marriott." (*Id.* ¶ 27). DMG's marketing efforts generated over 1,000 bookings. (*Id.* ¶ 29).

---

[2] Traceback refers to the process of following the path of a robocall back to the point of origination using notices to upstream providers and to call originators by the ITG.

[3] Mr. Borra claims that he stopped using the prerecorded calls with plaintiff's mark once he was warned by a data company about it in July 2021. (Docket no. 202-1, Borra Tr. 40: 17–20).

4

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that judgment as a matter of law is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet that burden, the moving party must demonstrate that no genuine issues of material fact exist. *Id.* at 322. If the moving party meets its burden, then the burden shifts to the nonmoving party to show those facts that do create disputed factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case."). Even if a motion for summary judgment is unopposed, the district court must still thoroughly analyze the motion. *See Maryland v. Universal Electronics, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013).

A fact is considered "material" if it could "affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is considered "genuine" if there is sufficient evidence in favor of the non-moving party which would allow the trier of fact to return a verdict for that party. *Id.* at 248–49. Summary judgment, therefore, is only appropriate where no material facts are genuinely disputed and the evidence, taken as a whole, could not lead a rational fact finder to find in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. ANALYSIS

Plaintiff brings this motion for summary judgment on Counts I (trademark counterfeiting) and II (trademark infringement) of the first amended complaint. (Docket no. 201 at 1). Plaintiff seeks the maximum statutory damages of $2,000,000 for willful infringement and a permanent injunction enjoining DMG, its principals, or others acting on its behalf from engaging in or facilitating infringing conduct in any way. (Docket nos. 201-1, 202 at 5–6). For the reasons stated below, the undersigned recommends that the motion for summary judgment be granted, that an injunction be entered, and that plaintiff be awarded $500,000 in statutory damages.

### A. Liability

Following the court's adoption of the undersigned's report and recommendation, judgment has been entered as to liability in favor of plaintiff and against DMG. (Docket nos. 209, 210). Still, even after default has been entered, the court must examine the essential elements of plaintiff's claims and determine whether plaintiff is entitled to relief on those claims.

*i. Trademark Infringement Claim*

For a trademark infringement claim under the Lanham Act, "a plaintiff must prove: (1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (quoting 15 U.S.C. § 1114(a)).

Here, all four elements are met. First, the court has already noted that plaintiff has shown that it has a valid, protectible trademark. (Docket no. 109 at 12 (citing Docket no. 22 ¶¶ 27–45)). Plaintiff also owns the federal-registered Marriott mark. (Docket no. 202 ¶ 1). Second, DMG

used the identical mark in commerce, as it was using an identical mark on its website and in prerecorded calls to sell its travel packages, and without plaintiff's authorization, as admitted by Mr. Borra in his deposition. (Docket no. 202 ¶¶ 15, 20, 27, 28; Borra Tr. 40: 4–7). Third, as noted, DMG admitted to using an identical mark in its offer to sell vacation packages. (Docket no. 202 ¶¶ 15, 27, 28). Fourth, DMG's use of the mark is likely to cause confusion. The mark used by DMG is identical to plaintiff's mark, and DMG was using that identical mark to market travel and vacation packages, which is the same industry as plaintiff's business. (*Id.* ¶¶ 15, 25, 28). DMG also admitted to using the mark with the intent to promote its business, believing that use of the mark would help increase its own sales of vacation packages. (*Id.* ¶¶ 25, 27). Therefore, plaintiff is entitled to summary judgment on its trademark infringement claim.

### ii. Trademark Counterfeiting Claim

To support a claim for counterfeiting, plaintiff "must provide evidence that the defendant (1) intentionally used a counterfeit mark in commerce; (2) knowing that the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse or deceive." *GoSecure Inc. v. Bhandari*, 2022 WL 15526054, at *6 (E.D. Va. Oct. 26, 2022) (citations omitted). A counterfeit mark is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

First, the mark used by DMG is identical to plaintiff's mark. (Docket no. 202 ¶¶ 15, 25, 27, 28). Second, DMG knew that the mark was duplicated. Mr. Borra testified that using the mark was a strategic business decision with the goal of increasing its own sales of vacation packages. (Docket no. 202 ¶ 27; Borra Tr. 98: 16–22; 99: 1–4). The remaining elements are identical to the elements of the infringement claim, and they are addressed above. Therefore, plaintiff is entitled to summary judgment on its trademark counterfeiting claim.

7

**B. Relief**

Plaintiff is seeking the maximum statutory damages of $2,000,000 for willful trademark counterfeiting and trademark infringement, as well as a permanent injunction enjoining DMG, its principals, or others acting on its behalf from engaging in or facilitating infringing conduct in any way. (Docket no. 202 at 5–6).

*i. Injunctive Relief*

Courts may grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116. A party seeking a permanent injunction "must demonstrate that (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) the balance of the hardships favors the party seeking the injunction; and (4) the public interest would not be disserved by the injunction. *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011) (citing *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)).

First, plaintiff need not offer specific evidence of irreparable injury in this case, as "irreparable injury regularly follows from trademark infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995); *see Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002) ("In Lanham Act cases involving trademark infringement, a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case."). Second, monetary damages in cases such as this one "are typically inadequate because while they may compensate plaintiffs for damages they have already incurred, monetary damages do not prevent future infringement from occurring." *RXD Media, LLC v. IP Application Dev't*, 2019 WL

2569543, at *1 (E.D. Va. June 21, 2019) (citation omitted). The threat of future infringement means that monetary damages are inadequate.

Third, an injunction would not cause a hardship to DMG. "[T]he only hardship suffered by defendant if an injunction is entered is an obligation to follow trademark law . . . ." *Hilton Worldwide, Inc. v. Global Advertising, Inc.*, 2016 WL 8223436, at *9 (E.D. Va. Apr. 8, 2016), *report and recommendation adopted*, 2016 WL 8231154 (E.D. Va. May 19, 2016). Given the presumption of irreparable injury for plaintiff noted above, the balance of hardship weighs in favor of an injunction. Fourth, an injunction serves the public interest, as it would prevent consumers from being confused about deceptively used trademarks and protect the interest of trademark owners. *See Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008) ("Preventing consumers from being confused serves the public interest, as does preventing trademarks from being used deceptively, protecting the interests of trademark owners, and enforcing valid contracts.") (citations omitted). Accordingly, the undersigned recommends an injunction permanently enjoining DMG, as well as its principals and others acting on its behalf, from further use or facilitation of use, of plaintiff's name, brand, and marks as detailed below.

*ii. Damages*

For cases involving the use of a counterfeit mark, the owner of a protected mark may "elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(c). Those statutory damages are "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.* § 1117(c)(1). However, if the court determines the use was willful, the statutory damages must be "not more than $2,000,000 per counterfeit mark per type of goods or

9

services sold, offered for sale, or distributed, as the court considers just." *Id.* § 1117(c)(2). "Infringement is willful if a defendant has knowledge that its conduct represented infringement or recklessly disregarded the possibility." *Mya Saray, LLC v. Al-Amir*, 831 F. Supp. 2d 922, 941, (E.D. Va. 2011) (citing *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999)). "Within these statutory limits courts have 'considerably broad discretion' to balance the 'punitive, deterrent function' of an award against the direction that it 'not constitute a windfall for prevailing plaintiffs.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 472 Fed. Appx. 19, 22 (2d Cir. 2012) (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010)). In *Louis Vuitton*, the Second Circuit acknowledged that the maximum amount of statutory damages would have been $8 million given the distinct and willful uses of multiple counterfeit marks and affirmed the district court's award of $3 million dollars. 472 Fed. Appx. at 22. In *Rolls-Royce,* the plaintiff also sought an award of $8 million dollars in statutory damages based on the number of marks and types of goods involved. 688 F. Supp. 2d at 157–58. The district court awarded a total of $2 million dollars weighing the "brazenness of the defendant's infringement" along with the "scant evidence" of how extensive or widespread the infringement was; finding that it more than compensates plaintiffs for the harm they suffered, it serves as a strong deterrent to future infringement, and anything greater than that would approach a "windfall" to the plaintiffs. *Id.* at 157–59.

First, the undersigned notes that DMG failed to fully participate in discovery, which hindered plaintiff's ability to determine actual damages. (*See* Docket nos. 182, 195, 209). Second, when using plaintiff's mark, DMG had prior knowledge of the mark and admitted to its famousness. (Docket no. 202 ¶¶ 2–3; Borra Tr. 19: 3–19; 40: 8–11). DMG deliberately duplicated plaintiff's mark in a way that was calculated to benefit DMG from the good will

plaintiff had nurtured. *See W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970). DMG's principal, Mr. Borra, admitted as much in his deposition. (Borra Tr. 40: 21–22; 41: 1–7). At minimum, DMG recklessly disregarded that its conduct represented infringement of plaintiff's mark, and therefore the conduct was willful.

However, there are mitigating factors in this case that suggests an award of the maximum statutory damages is not appropriate in this case. Maximum statutory damages are typically used for the most egregious offenders. *See Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 490–491 (E.D. Va. 2002) (noting that, in the cyber-squatting context, "courts reserve the high-end of the [statutory damages] range for the most egregious offenders."). According to Mr. Borra's deposition, DMG only used the prerecorded messages that named plaintiff (along with Hilton) from January to July 2021. (Borra Tr. 36: 13–14; 39: 18–21). Mr. Borra claimed that, at the time, he did not realize it was "a big deal" to use plaintiff's mark in the prerecorded messages. (Borra Tr. 40: 8–14). DMG was also not fraudulently claiming to represent plaintiff, but rather its intention was to generally mention plaintiff's mark "to gather interest" in the vacation packages DMG offered. (Borra Tr. 41: 4–7; 106: 11–13). Once a data company warned him about the alleged infringing use, Mr. Borra claims DMG stopped using the mark and has not used it since. (Borra Tr. 40: 15–20).

As alleged in the first amended complaint, since October 12, 2018, defendants in this action collectively delivered an estimated 71.2 million robocalls purporting to be from Marriott to consumers throughout the United States. (Docket no. 22 ¶ 23). Plaintiff alleges that DMG placed approximately 3.9 million robocalls (*Id.* ¶ 113), less than six percent of the total calls alleged to have been sent by all the defendants. The infringing conduct by DMG was also more limited in time (January to July or August 2021) than the remaining defendants (October 12,

2018 to the present). The infringing conduct resulted in approximately 1,000 bookings by DMG (Docket no. 202 ¶ 29) and the dollar amount of bookings alleged in the first amended complaint range from $450 to $5,600 with the median being around $1000. (Docket no. 22 ¶¶ 99–104). Given the reasonable royalty rate that plaintiff's expert has provided in his expert report of approximately 10% (Docket no. 188-1), any award of more than $500,000 could result in a significant windfall to plaintiff. As in *Rolls Royce*, the court is not conflating statutory damages with actual damages, but evidence showing the extent of DMG's sales can help inform the court as to a proper range for statutory damages. 688 F. Supp. 2d at 158 (citing *Burberry Ltd. v. Euro Moda, Inc.*, 2009 WL 4432678, at *4–5 (S.D.N.Y. Dec. 4, 2009)). For all of these reasons, the undersigned recommends that an award of $500,000 in statutory damages takes into consideration that the maximum amount should be reserved for the most egregious offenders, that it provides an adequate deterrent, and it is just under all the circumstances.

## IV. CONCLUSION

For these reasons, the undersigned magistrate judge recommends that judgment be entered in favor of plaintiff Marriott International, Inc. and against defendant Dynasty Marketing Group LLC in the amount of **$500,000.** The undersigned further recommends an injunction be entered such that Dynasty Marketing Group LLC, its principals including Bruno Borra, together with all those in active concert or participation with them, are jointly and severally enjoined from:

1. Using and/or facilitating the use of any copy or colorable imitation of a mark registered to plaintiff Marriott International, Inc. with the United States Patent and Trademark Office (the "Marriott Marks"), including but not limited to the marks identified in paragraph 37 and Exhibits A and B of the first amended complaint, in connection with the promotion,

advertisement, display, sale, offering for sale, manufacture, printing, importation, production, circulation, or distribution of any product or service, in such fashion as to relate or connect such product in any way to Marriott, or to any goods sold, manufactured, sponsored, approved by, or connected with Marriott; and

2. Using print materials, telemarketing, its website, Facebook, Instagram, or other social media platforms to copy, distribute, alter, display, and/or promote the Marriott name, brand, marks and/or the Marriott works; and

3. Engaging in any other activity constituting an infringement of the Marriott Marks or Marriott works, or causing any harm to Marriott's name, brand, reputation, or goodwill.

## V. NOTICE

By means of the court's electronic filing system and by mailing a copy of this report and recommendation to defendant Dynasty Marketing Group LLC, 773 South Kirkman Road, Orlando, FL 32811, to Mr. Bruno Borra at 1912 Ham Brown Road, Kissimmee, Florida 34746 and 6100 Lake Ellenor Drive 258, Orlando, Florida 32805, and by email to bruno@dynastymarketinggroup.com the parties are notified that objections to this report and recommendation must be filed within fourteen (14) days of service of this report and recommendation, and a failure to file timely objections waives appellate review of the substance of the report and recommendation and waives appellate review of any judgment or decision based on this report and recommendation.

Entered this 6th day of February, 2023.

/s/ JFA
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia